# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| ROBERT L. WIGGINS, JR., individually and WOLF PUP, LLC, by and through ROBERT L. WIGGINS, JR., <br>     Plaintiffs, <br><br> v. <br><br> FDIC, as Receiver of Superior Bank, FRANK ELLIS, IV, and CHARACTER COUNTS, LLC, MIHYON ELLIS, TRINITY RETREATS, LLC, CADENCE BANK, BRYANT BANK, <br><br>     Defendants. <br><br> FRANK ELLIS, IV, and CHARACTER COUNTS, LLC, <br>     Counterclaim Plaintiffs <br><br> v. <br><br> ROBERT L. WIGGINS, JR., and and WOLF PUP, LLC, by and through ROBERT L. WIGGINS, JR., and LINDA PEACOCK, <br>     Counterclaim Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION NO. <br> 2:12-cv-02705-SGC |

## SECOND AMENDED COMPLAINT

Plaintiffs amend and restate their *Complaint* as follows:

1.    Wolf Pup, LLC ("Wolf Pup") owned a 62 unit development named Wolf

Bay Landings which was financed through a loan with Superior Bank ("Superior")

1

for $17,500,000 ("loan" hereafter). The loan was secured by personal guarantees of persons associated with Wolf Pup, LLC, which included Robert L. Wiggins, Jr. ("Wiggins").

2.      Wolf Pup, LLC subsequently agreed to sell Wolf Bay Landings to Frank Ellis, IV ("Ellis"), acting through Character Counts, LLC ("CCLLC"), and to allow Ellis and CCLLC to finance such purchase by assuming Wolf Pup, LLC's construction loan with Superior Bank in the approximate amount of $17,500,000.

3.      Ellis and CCLLC purchased Wolf Bay Landings from Wolf Pup, LLC on October 5, 2007 by executing a contract entitled *Loan Assumption and Modification Agreement* with Superior Bank – a contract to which Wolf Pup, LLC, and Wiggins were also parties.  CCLLC and Ellis acquired ownership and title to Wolf Bay Landing by and through such loan assumption.

4.      Upon entering the *Loan Assumption and Modification Agreement* with Superior Bank, Ellis and CCLLC became the "Borrower" and principal obligor on such loan.  Ellis and CCLLC executed agreements which defined the "Borrower" of such loan as "Frank Ellis, IV" and Character Counts, LLC.  *See* Exhs. 1 & 2 attached.

5.      As an inducement to the plaintiffs to sell Wolf Bay Landings and remain as secondary sureties on the loan assumption for a period not to exceed one year, Frank Ellis and CCLLC executed and recorded four agreements which created security interests in favor or Wolf Pup LLC and its members to secure the contractual

obligation of Ellis and CCLLC to repay the loan in full within one year of the loan assumption. Those four agreements were: (1) the *Membership Interest Pledge Agreement* attached as Exhibit 1 ("*Pledge Agreement*"hereafter); (2) the *Repayment Agreement* attached as Exhibit 2; (3) the *Transfer and Assignment Agreement* attached as Exhibit 3; and (4) the *Loan Assumption and Modification Agreement* attached as Exhibit 4 (collectively "loan documents" hereafter). Each of such agreements were between Ellis/CCLLC and the plaintiffs and were part of the loan documents closed as the means for Ellis and CCLLC to purchase Wolf Bay Landings and assume the underlying loan for such property. As the "Borrower" defined in such agreements, Ellis and CCLLC contractually obligated themselves to "Wolf Pup [and] its members" to repay the loan to Superior Bank. *See* Exhibits 1 and 2 attached. That agreement executed as part of the closing of Ellis's and CCLLC's loan assumption required the following:

> 12. All indebtedness to Superior Bank shall be refinanced, or otherwise paid in full, on or before one (1) year from the date hereon, and the current guarantors thereof released, or the Borrowers shall be considered in default, and in default of the Loan Documents. (emphasis supplied)

*Membership Interest Pledge Agreement* at Section 12 ("*Pledge Agreement*"; attached hereto as Exhibit 1).

6.     In defining Ellis/CCLLC as the "Borrower", the *Repayment Agreement* executed by Ellis and CCLLC states that "Borrower agrees to **timely pay** to Superior

Bank **all** monthly interest payments in connection with the Indebtedness" and that "Borrower agrees that the Wolf Bay Landing . . . shall not be sold in its entirety absent **payment in full** of the existing Superior Bank indebtedness **by Borrower**." Exhibit 2, *Repayment Agreement* at pp. 1-2, ¶¶1 & 6 (emphasis added). Ellis's *Pledge Agreement* was incorporated by reference in his *Repayment Agreement* "as **security** for the **full payment** and performance of all [his] obligations under the Loan Documents." Exhibit 1, *Pledge Agreement* at p. 1 (emphasis added). The *Pledge Agreement* executed by Ellis in favor of the plaintiffs specifically states that in order "to **induce** Pledgee to enter into and accept" his assumption of the loan for Wolf Bay Landings, Ellis agreed to "pledge . . . one hundred percent (100%) membership interest in CCLLC . . . as security for the **full payment** and performance of all [his] obligations under the Loan Documents" and that "**all** indebtedness to Superior Bank shall be . . . paid in full on or before one year from the date hereof, **and the current guarantors thereof released**." Exhibit 1, *Pledge Agreement* at p. 1, ¶12 (emphasis added). Frank Ellis signed such agreements on his own behalf and signed separately a second time as the "Manager/Member" of CCLLC. Ellis and CCLLC also contractually obligated themselves to assist . . . in securing the release, by Superior Bank, of the interest reserve and pledged collateral referenced in Section 2 and 3 of the Repayment Agreement. Exh. 2. Wolf Pup LLC and Wiggins became secondary sureties only for a period of one year from the date CCLLC and Frank Ellis assumed

the loan. *See* Exhibit 1, ¶12, *Membership Interest Pledge Agreement*.

7.     Ellis and CCLLC subsequently satisfied and were released from any further obligation to repay such loan by all banks having any interest in its repayment, which included Superior Bank N.A. and Cadence Bank as the successor to Superior Bank. *See* Exhibit 5 attached hereto. Cadence Bank filed a formal "termination" of all security interests in the loan, mortgages and guaranties related to Wolf Bay Landings on June 26, 2014, including all remaining rights against Wolf Pup, Wiggins and CCLLC in regard to all such loans. *See* Exhibit 5.  That satisfaction and release extinguished all rights and claims of each bank having any interest in the loan for Wolf Bay Landings and specifically released Wolf Pup, LLC, Robert Wiggins, Frank Ellis and CCLLC from any and all obligation to such banks for such loan. *Id.*

8.      Having satisfied and been released from the loan for Wolf Bay Landing, Ellis and CCLLC were contractually obligated to respect and abide by the parallel release of Wolf Pup and Wiggins as guarantors/sureties as required by Ellis's and CCLLC's Pledge Agreement (Exh. 1) and  Repayment Agreement (Exh. 2).

9.     The foregoing satisfaction and release includes any repayment rights claimed by Ellis pursuant to his alleged purchase of the Wolf Pup Landings loan in 2010-2011. The satisfaction and release of Ellis and CCLLC from their loan repayment obligations automatically and explicitly operated to release the plaintiffs from any liability for such repayment in the manner set forth in the *Pledge*

*Agreement*, *Repayment Agreement* and *Loan Assumption and Modification Agreement* that Ellis and CCLLC executed in favor of Wolf Pup, LLC and Wiggins. *See* Exhibits 1-5. As the primary obligor for repayment of such loan, Ellis and CCLLC were prohibited from shifting their repayment obligations to secondary sureties like Wolf Pup, LLC and its guarantors, both as a matter of law and pursuant to the specific terms of the *Pledge Agreement* and *Repayment Agreement* that Ellis and CCLLC executed in favor of Wolf Pup LLC and Wiggins as an inducement for them to sell Wolf Pup Landings to Ellis and CCLLC.

10.     Ellis and CCLLC breached the Repayment Agreement and the Pledge Agreement they executed in favor of Wolf Pup and Wiggins by failing to satisfy the loan obligations they assumed for Wolf Bay Landings and failing to formally release all guarantors/sureties on such loan. Ellis and CCLLC have also breached such *Repayment Agreement*, the *Pledge Agreement* and the *Loan Assumption and Modification Agreement* by failing and/or refusing to timely pay off the Wolf Bay Landings loan in the manner required by such contracts.

11.     On December 23, 2010, Ellis, CCLLC and Superior Bank jointly conspired to undo Ellis's and CCLLC's contractual obligations to the plaintiffs to repay the loan. Acting together, such defendants attempted to shift such repayment obligation from Ellis to the plaintiffs on the pretext that Superior "sold" the loan to Ellis rather than requiring him to repay it in the manner required by the loan

documents. Ellis paid nothing for his alleged purchase of such loan. Instead, Superior refinanced the full amount of the loan, thereby triggering the contractual obligation to release the plaintiffs from their secondary status as sureties or guarantors.

12. Wolf Pup, LLC never executed a guaranty for any aspect of the loan or *Loan Assumption and Modification Agreement*. The *Loan Assumption and Modification Agreement* states that the "Borrower" is CCLLC, not Wolf Pup or Wiggins. To the extent that Wolf Pup, LLC may have become a surety by operation of law upon assumption of the Loan by Ellis and CCLLC, Wolf Pup never entered into any agreement with any person or entity that waived any of its rights as a surety.

13. Superior Bank, Ellis and CCLLC further breached their one-year repayment obligation by: (1) unilaterally extending the deadline for such repayment beyond the agreed-upon one year period without the knowledge or consent of the plaintiffs; and (2) by attempting to unilaterally eliminate such repayment obligation on the pretext of "selling" the loan to Ellis and converting him from primary obligor to "lender" without any further obligation to repay the underlying loan.

14. The *Loan Assumption and Modification Agreement* executed October 5, 2007, was a contract "by and among SUPERIOR BANK . . . , WOLF PUP, LLC . . ., and CHARACTER COUNTS, LLC, . . . , with the consent of . . . Robert L. Wiggins, Jr., and Frank P. Ellis, IV, as guarantors." Exh. 4. The Loan Assumption

and Modification Agreement is signed by Robert L. Wiggins, Jr., on behalf of Wolf Pup. Such contractual consent by Wiggins and Wolf Pup, however, was limited to the agreed-upon Maturity Date of March 22, 2008 which required CCLLC and Ellis to repay the loan in full by that date. The *Loan Assumption and Modification Agreement* specifically defined March 22, 2008 as the Maturity Date for CCLLC to repay such loan in full. Such *Loan Assumption and Modification Agreement* states that "[i]t is the intent hereof to extend the Maturity Date to March 22, 2008" and that CCLLC would have an "option" to "further extend the Maturity Date . . . to September 22, 2008." *Loan Assumption and Modification Agreement*, ¶5 (n-p). The *Loan Assumption and Modification Agreement* contained no provision for further extension or modification beyond September 22, 2008.  Exh. 4.

15.     Defendants Ellis, CCLLC and Superior Bank breached such contractual requirements by not requiring the loan assumed by CCLLC and Ellis to be repaid by the Maturity Date defined in the *Loan Assumption and Modification Agreement* and/or by the one year deadline defined the *Pledge Agreement.*

16.     Rather than requiring Ellis and CCLLC to repay such loan within the agreed-upon Maturity Date and the parallel one year repayment deadline, Superior, Ellis and CCLLC jointly acted to undermine and breach such repayment obligations by unilaterally extending the mandatory one-year deadline for repayment without the plaintiffs' knowledge or consent, by not releasing the plaintiffs from their status as

8

secondary sureties once Ellis satisfied the loan for Wolf Bay Landings by refinancing the full amount of such loan in December 2010, and by otherwise attempting to unilaterally shift Frank Ellis's repayment obligation to the plaintiffs on the pretext that he had refinanced the purchase of the loan rather than the loan itself, thereby converting himself from a borrower to a lender in breach of his contractual obligation to the plaintiffs to pay-off the loan and release them as secondary sureties.

17. On November 21, 2008, Superior Bank, Ellis and CCLLC unilaterally modified the loan's Maturity Date by entering into a *Fourth Amendment to Loan Documents* without the knowledge of Wolf Pup or Wiggins. This undisclosed modification of the Maturity Date for CCLLC's repayment of the loan unilaterally extended the Maturity Date for an additional year from September 22, 2008 to September 29, 2009. *See Fourth Amendment to Loan Documents* dated November 21, 2008. Such *Loan Assumption and Modification Agreement* contained no provision for unilateral extensions or modifications. Consequently, Superior, Ellis, and CCLLC breached such *Loan Assumption and Modification* on several occasions by unilaterally extending the contract's Maturity Date on several occasions the knowledge or consent of Wiggins and Wolf Pup, LLC as sureties on such loan. Superior Bank thereafter unilaterally modified CCLLC's repayment obligation on several other occasions, including from September 22, 2009 to December 22, 2009, from the latter date to June 24, 2010, and then to August 15, 2010 and December 23,

2010. On December 23, 2010, Superior Bank attempted to further modify CCLLC's and Frank Ellis's repayment obligations unilaterally by converting Ellis from the primary obligor for such repayment to selling such loan to CCLLC's owner, Frank Ellis IV, under terms that allow Ellis to decide when and if his LLC will have to repay the loan that it assumed from Wolf Pup LLC. *See* Loan Agreement of December 23, 2010.

18.     Without Wolf Pup's or Wiggins' knowledge, on December 23, 2010, Ellis bought the Loan that had been assumed by CCLLC and guaranteed by Ellis from Superior Bank (with moneys borrowed from Superior Bank) and then unilaterally extended and modified CCLLC's loan obligation and maturity date for many years longer than Wolf Pup and Wiggins agreed to in the Loan Assumption and Modification Agreement, the Repayment Agreement, the Pledge Agreement and related loan documents.

19.     Additional unilateral extensions ultimately extended the maturity date of the Loan to 2015 on $5,346,575.20 of such loan and to 2033 on the remaining $10,700,000. Superior Bank and Ellis unilaterally extended the time for repayment of the "Note B" amount of $5,346,575.20 for four years until December 23, 2015 and unilaterally extended the time for repayment of the Note A amount of $10,700,000 until January 10, 2033, which is an additional 22 years beyond what plaintiff and Wolf Pup LLC agreed to in the *Loan Assumption and Modification Agreement* and

the related *Pledge Agreement* of October 5, 2007. Only monthly payments will be due on the principal of Note A during that 22 year period.

20. Such unilateral modifications and extensions of the time for repayment of the loan by Superior, Ellis and CCLLC were a breach of contract. They also operated to discharge Wiggins and Wolf Pup, LLC as sureties based on the rule of law that a surety is "discharged from liability" whenever an extension of the time and manner of payment is given by the mortgagee with the consent of the original maker and sureties.

21. Ellis's and Superior Bank's *Loan Sale Agreement* also unilaterally imposed additional indebtedness and new terms that allowed Ellis to decide when and if CCLLC will have to repay the loan that it assumed. To finance the purchase of CCLLC's loan with Superior Bank, Ellis borrowed $16,046,575.20 from Superior Bank in his individual name pursuant to a *Loan Sale Agreement* that split the original debt between a recourse "Note A" in the amount of $10,700,000.00 and a non-recourse "Note B" in the amount of $5,346,575.20 - for which Ellis is apparently not personally liable.

22. In 2005, prior to the time that CCLLC assumed such loan, Wiggins posted with Superior Bank a Certificate of Deposit in the amount of $1,500,000, plus accrued interest, as an accommodation for Wolf Pup LLC's original loan for the construction of Wolf Bay Landings. As part of the closing of the above-referenced

*Loan Assumption and Modification Agreement*, Superior, Ellis and CCLLC, Wolf Pup and Wiggins executed a Repayment Agreement that required Ellis and CCLLC to "immediately repay" to Wiggins any portion of his Certificate of Deposit or accrued interest thereon that Superior Bank may seize or apply to Ellis's and CCLLC's indebtedness for purchase of Wolf Bay Landings. Exh. 2.

23.    In 2007, Wolf Pup, LLC deposited an interest reserve with Superior Bank in an amount exceeding $560,000 as further collateral for Wolf Pup LLC's original loan for the construction of Wolf Bay Landings. Like Wiggins' Certificate of Deposit with Superior Bank, that interest reserve deposit was conditioned on the Agreement between Superior, Ellis, CCLLC, Wolf Pup and Wiggins that Ellis and CCLLC would immediately repay any portion of such interest reserve that might be applied by Superior Bank to Ellis's and CCLLC's indebtedness for the purchase of Wolf Bay Landings.

24.    On December 23, 2010 – the same day that Ellis purported to "buy" his own loan – Superior Bank and Ellis acted jointly to cash, seize or otherwise draw upon Wiggins' Certificate of Deposit and accrued interest in an amount exceeding $1,800,000. Superior Bank also cashed, seized or otherwise drew upon the interest reserve that Wolf Pup, LLC had deposited with Superior Bank. Superior Bank applied these funds to reduce the principal indebtedness of Ellis and CCLLC to Superior Bank pursuant to the *Loan Assumption and Modification Agreement*.

25.     Ellis, CCLLC and Superior Bank had the contractual duty, the fiduciary duty, the duty of good faith and fair dealing, the duty of a bailor and the duty of a principal not to interfere with or modify the rights of Wiggins and Wolf Pup LLC as sureties and as contracting parties. Ellis and CCLLC have breached such *Repayment Agreement*, the *Pledge Agreement* and the *Loan Assumption and Modification Agreement* by refusing to repay such funds plus accrued interest that were seized and applied by Superior Bank for its benefit, refusing to pay off the Wolf Pup Loan, refusing to release Wolf Pup and Wiggins, refusing to repay Wiggins CD pledged as collateral for Wolf Pup's indebtedness and refusing to repay the Wolf Pup interest reserve held by Superior Bank. As a depositor bank for the benefit of Wolf Pup and Wiggins, Superior Bank breached its depositor agreement with Wolf Pup/Peacock by converting Wiggins' Certification of Deposit and Wolf Pup's interest reserve account.

26.     Wiggins and Wolf Pup, LLC did not know about or consent to the *Loan Sale Agreement* between Ellis and Superior Bank. Plaintiffs were first notified on January 28, 2011 that Ellis had bought Superior Bank's loan to CCLLC, which was more than a month after Ellis's *Loan Sale Agreement* with Superior Bank dated December 23, 2010.

27.     Superior Bank and Ellis further impaired Wiggins' and Wolf Pup, LLC's rights as secondary obligors or sub-sureties of the primary obligor (CCLLC) when, as part of the loan sale to Ellis, Superior Bank released Ellis as a guarantor of such

debt without the knowledge or consent of Wiggins or Wolf Pup. Superior Bank canceled Ellis's personal guaranty on both of these notes without the knowledge, consent or ratification of Wiggins or Wolf Pup, LLC.

28.    The *Loan Sale Agreement* dated December 23, 2010 materially altered Wiggins' guaranty contract and also materially altered his underlying obligations in relation to the original loan. Because these alterations were made without Wiggins' knowledge and consent, Wiggins was discharged from further liability under his guaranty.

29.    In addition, the *Fourth Amendment to Loan Documents* breached the *Loan Assumption And Modification Agreement* by unilaterally increasing the interest rate to a minimum of 4% without the knowledge or consent of Wiggins or Wolf Pup, LLC.

30.    The *Loan Assumption Agreement and Modification Agreement* between CCLLC and Superior Bank that Wiggins and Wolf Pup LLC states that "[i]t shall be a condition of the Loan that . . . CCLLC at all times . . . shall incur no other debt other than the Loan and the subordinate debt to [Wolf Pup, LLC] set forth herein." Superior Bank altered such condition without the knowledge or consent of Wiggins or Wolf Pup by providing five additional loans that were secured by the same collateral already pledged to secure CCLLC's assumption of the original loan and CCLLC's related Note to Wolf Pup, LLC to purchase Wolf Bay Landings. Prior to

Ellis entering into the *Loan Sale Agreement* with Superior Bank, Ellis, through CCLLC, had borrowed an additional $500,000 to furnish some of the units. In the above-referenced December 23, 2010, Loan Sale Agreement, Ellis not only purchased Superior Bank's Loan Assumption and Modification Agreement to CCLLC, but also purchased Superior Bank's Furnishing Loan to CCLLC. As collateral for said Loan Sale Agreement, Ellis purported to pledge to Wiggins' personal guarantee to Superior Bank. At the same time, Superior Bank agreed to increase the unit release price of such collateral without the knowledge or consent of Wiggins or Wolf Pup.

31.    Wiggins and Wolf Pup, LLC did not know about or consent to the additional debt which Superior, Ellis and CCLLC financed for their personal benefit. Wiggins and Wolf Pup, LLC did not consent to securing such additional debt with the collateral already pledged to secure CCLLC's Note to Wolf Pup LLC for the purchase of Wolf Bay Landings.

32.    The discharge of Wolf Pup, LLC as surety for the Loan assumed by CCLLC simultaneously discharged Wiggins as surety for Wolf Pup, LLC for such Loan assumed by CCLLC. Wiggins only guaranteed the obligations of Wolf Pup, LLC under such Loan. His guaranty clearly states that it applies only to the "indebtedness of Wolf Pup, LLC." Ellis was the only person who executed a guaranty of CCLLC's debt.

33.    The *Membership Interest Pledge Agreement* executed by Ellis was

recorded as a security interest pursuant to the Financing Statement filed under the Uniform Commercial Code. *See* Exhibit 6. That agreement pledged all of Frank Ellis's membership interests in CCLLC to Wolf Pup LLC and its members as security to assure repayment of the loan that CCLLC and Ellis assumed as the means of purchasing Wolf Bay Landings from Wolf Pup. *Id.* Ellis also secured his loan repayment obligation in ¶12 of such *Pledge Agreement* by contractually agreeing to pay-off the loan and release the plaintiffs as sureties "on or before one (1) year from the date herein." Exhibit 1, ¶12.

34.     Superior Bank subsequently failed and was taken over by the FDIC as Receiver. The FDIC assigned all of Superior Bank's rights and interests in the Wolf Bay Landings loan to a new entity, Superior Bank N.A., and that entity was later purchased by and merged with Cadence Bank. The defendants then joined together to interfere with, convert and/or unilaterally subordinate the earlier-filed security interests and repayment rights belonging to Wolf Pup, LLC and its members by having Ellis "foreclose" on CCLLC's ownership of Wolf Bay Landings and to then sell the foreclosed property to Ellis's wife, Mihyon Ellis, acting in the guise of a new single-asset LLC named Trinity Retreats, LLC.

35.     Ellis's foreclosure on his own LLC's interest in Wolf Bay Landings and resale to his wife's LLC was a sham transaction jointly structured and executed by Cadence Bank, Frank Ellis, Mihyon Ellis, Trinity Retreat, LLC and Bryant Bank.

Bryant Bank joined in such conspiracy and wrongful conduct by financing such foreclosure and sale in exchange for a mortgage on the Wolf Bay Landings property that was already subject to the pledge that Ellis and CCLLC executed in favor of Wolf Pup, LLC and Wiggins. Rather than simply obtaining the same refinancing to satisfy the Wolf Bay Landings loan in the straightforward manner required by Ellis's and CCLLC's *Pledge Agreement*, *Repayment Agreement* and *Loan Assumption Agreement*, Ellis and CCLLC conspired with Cadence Bank, Bryant Bank, Mihyon Ellis and Trinity Retreats, LLC to "foreclose" on the Wolf Bay Landings property and CCLLC membership interests that were already pledged to the plaintiffs as a means of obtaining the release of Ellis and CCLLC from any further loan repayment obligations for the Wolf Bay Landings loan while still preserving the litigation claims that Ellis and CCLLC had pending against Wolf Pup, LLC and Wiggins. Ellis, Cadence Bank and CCLLC agreed to split all litigation proceeds between them, as shown by the assignment of such litigation proceeds executed by such parties. For this purpose, the defendants joined and conspired together to attempt to shift Ellis's and CCLLC's loan repayment obligations to the plaintiffs and to take ownership of Wolf Bay Landings from Wolf Pup, LLC and its members without ever paying the agreed-upon purchase price for such sale.

36.     The defendants joined with each other in a scheme to avoid performance of Ellis's and CCLLC's contractual obligation to pay-off the loan purchase of Wolf

Bay Landings and release the plaintiffs from such loan by having Ellis foreclose on CCLLC's ownership of Wolf Bay Landings, and sell such property to his wife's LLC's (Trinity Retreats, LLC), without paying-off the loan for such property or releasing the plaintiffs as required by Ellis's *Pledge Agreement* to the plaintiffs. Defendants contend that Ellis "foreclosed" on himself and his LLC (Character Counts LLC) by "selling" the Wolf Bay Landings property and condominiums to his wife, Mihyon Ellis, acting through Trinity Retreats LLC. In June 2014, Ellis foreclosed the mortgage, and Trinity Retreat acquired the project at the foreclosure sale. Bryant Bank provided the financing to enable Trinity Retreat to purchase the project.

37.    Superior Bank, Ellis and CCLLC took, converted, interfered with, attempted to unilaterally subordinate and otherwise injured plaintiffs' superior security interest set forth in the *Membership Interest Pledge Agreement*, the *Repayment Agreement*, the UCC Financing Statement and the loan documents as a whole.

38.    Defendants Frank Ellis, Mihyon Ellis, Cadence Bank and Bryant Bank also acted and conspired together to take, convert, interfere with, unilaterally subordinate and otherwise injure plaintiffs' earlier-filed security interest in CCLLC and its assets, as well as the parallel pledge by Ellis and CCLLC to repay the underlying loan for Wolf Bay Landings in full. Without plaintiffs' knowledge or consent, such defendants acted and conspired together to take ownership of the

collateral pledged to the plaintiffs as security for Ellis's repayment of the loan for such defendants' and CCLLC's purchase of Wolf Bay Landings by having Frank Ellis "foreclose" on the very same property he had pledged to the plaintiffs and which secured his obligation to repay that loan in full and then pretend to sell such property to his wife, Mihyon Ellis, through her newly formed LLC, Trinity Retreats, LLC.

39.     Such foreclosure and sale was effectuated jointly by defendants Frank Ellis, Mihyon Ellis, Trinity Retreats LLC, Cadence Bank and Bryant Bank.  Each of such defendants was on notice of plaintiffs' earlier filed security interest in the foregoing collateral but attempted to insulate themselves from such knowledge and liability by having Frank Ellis execute a false representation warranting that he had full authority to act on behalf of CCLLC as a part of such transaction and foreclosure. Frank Ellis executed a written warranty to Cadence Bank on May 1, 2014 which "represents and warrants that . . . all company action required to be taken by Character Counts and its partners, members, managers, officers, directors and/or stockholders for the authorization, execution, delivery and performance of this Agreement and any other documents contemplated hereby have been taken." *Second Settlement Agreement* at 14, ¶30.  Such representation and warranty was known to be false when made because the defendants were on notice that Ellis had previously pledged and/or assigned all such membership interests in CCLLC to Wolf Pup LLC and its members in the *Membership Interest Pledge Agreement* that he executed and

recorded in a UCC Financing Statement in 2007. *See* Exhibits 1-4, 6 hereto. Frank

Ellis had also executed documents assigning membership interests in CCLLC to Wolf

Pup LLC and its members in the *Transfer and Assignment Agreement* that he

executed in 2007. *See* Exhibit 3 attached hereto. Each of the defendants were on

notice that Frank Ellis had previously pledged his membership interests in CCLLC

to Wolf Pup LLC in 2007 and recorded such pledge in a UCC Financing Statement

that remained valid from 2007 through the present. *See* Exhibits 1-3, 6. Defendants

therefore knew that Ellis's representations and warranty that he had authority to act

on behalf of CCLLC and to foreclose Wolf Bay Landings was false when made and

in violation of his earlier-filed pledges to the plaintiffs. Notwithstanding such notice

and knowledge of Wolf Pup LLC's superior security interest in the membership

interests of CCLLC and in the Wolf Bay Landings collateral owned by CCLLC, the

defendants acted together and conspired to take, interfere with, convert, secretly

attempt to subordinate, and otherwise injure plaintiffs' superior interest in CCLLC

and the Wolf Bay Landings collateral that it owned and pledged as security.

Defendants took such action without disclosing or giving notice to Wolf Pup LLC or

its members of any such actions or events which took, foreclosed, interfered with,

converted, and otherwise attempted to unilaterally subordinate plaintiffs' security

interest in such collateral, property and transactions.

     40.    The written warranty that Frank Ellis gave to Cadence Bank on May 1,

2014 also "represents and warrants that . . . the person executing this Agreement and all other documents and agreements that are reasonably necessary or incidental to fulfill the objectives of this Agreement on behalf of Character Counts is an authorized representative of Character Counts with authority to bind Character Counts on his or her own and without additional persons or signatures." *Second Settlement Agreement* at 14, ¶30. Such representation and warranty was false when made because Ellis had previously pledged and/or assigned all such membership interests in CCLLC to Wolf Pup LLC and its members in the Membership Interest Pledge Agreement that he executed and recorded in a UCC Financing Statement in 2007. Exhibits 1-4, 6 hereto. The defendants were on notice that Frank Ellis had previously pledged his membership interests in CCLLC to Wolf Pup LLC in 2007 and recorded such pledge in a UCC Financing Statement that remained valid from 2007 through the present. *Id.* Defendants therefore knew that Ellis's representations and warranty that he had authority to act on behalf of CCLLC and to foreclose Wolf Bay Landings were false when made and in violation of such earlier-filed pledges to the plaintiffs. Notwithstanding such notice and knowledge of Wolf Pup LLC's superior security interest in the membership interests of CCLLC and Wolf Bay Landings collateral for the loan at issue, the defendants acted together and conspired to take, interfere with, convert, secretly attempt to subordinate, and otherwise injure plaintiffs' superior interest in CCLLC and the Wolf Bay Landings collateral. Defendants took such

action without disclosing or giving notice to Wolf Pup LLC or its members of any such actions or events which took, interfered with, converted, attempted to unilaterally subordinate or otherwise adversely affected the plaintiffs' security interests in such collateral, property and transactions.

41. Cadence Bank was actively involved in planning and executing such actions and foreclosure, and it ultimately received more than five million dollars of the resulting proceeds. Bryant Bank was also actively involved in the planning and execution of such foreclosure, including financing the sham sale to Mihyon Ellis and Trinity Retreats, LLC which took, converted, interfered with or attempted to unilaterally subordinate the plaintiffs' superior security interest in CCLLC and its assets. As a result of such wrongful actions, Bryant Bank became the recipient and beneficiary of the Wolf Bay Landings collateral that was subject to plaintiffs' earlier-filed security interest.

42. Plaintiffs properly exhausted their administrative remedies and satisfied all administrative conditions precedent to suit against the Federal Deposit Insurance Corporation as the Receiver of Superior Bank. Plaintiffs' initial *Proof of Claim* specifically alleged Superior Bank's "suppression and concealment" of its unilateral modifications of its loan and loan assumption with Character Counts LLC ("CCLLC") and Frank P. Ellis IV ("Ellis") as having damaged Wolf Pup and Wiggins and discharged their suretyships. That initial administrative *Proof of Claim*

specifically stated that "[t]his claim includes a claim that Superior Bank suppressed and actively concealed material information that it had a duty to disclose for the purpose of depriving Wiggins and his interests of critical information concerning defaults in agreements between Wiggins and his interests, on the one hand, and Ellis and his interests, on the other hand." *Proof of Claim* at p. 1. That "material information" which Superior "suppressed and actively concealed" included the Bank's unilateral modifications and extensions of its loan to CCLLC and Ellis which are described in this *Amended Complaint.* The initial administrative claim also explicitly challenged Superior's "application of collateral for purposes of servicing the loan" and that this "triggered obligations of Ellis and his interests to Wiggins and his interests." *Proof of Claim* at 1. The initial *Proof of Claim* further stated that "Superior *did seize or draw on* the interest reserve, at times unknown" and that the Bank "either negligently, recklessly, wantonly or intentionally suppressed and concealed its actions from Wiggins and his interests, including the original borrower Wolf Pup LLC, thereby preventing the exercise of remedies by Wiggins and his interests, including, Wolf Pup LLC, against Ellis and his interests. The value of the remedies declined as time passed." *Proof of Claim* at 1-2. The *Proof of Claim* also stated that "Superior has refused despite repeated requests, to account for the various applications of the interest reserve and other collateral." *Proof of Claim* at 2 (Doc. 4 at 11). Such undisclosed unilateral modifications are part of the fraudulent

"suppression and concealment" alleged in plaintiffs' initial *Proof of Claim* filed with the FDIC when it stated that "[t]his claim includes a claim that Superior Bank suppressed and actively concealed material information that it had a duty to disclose for the purpose of depriving Wiggins and his interests of critical information concerning defaults in agreements between Wiggins and his interests, on the one hand, and Ellis and his interests, on the other hand." Doc. 4 at 10-11; *Proof of Claim* at 1.

## COUNT ONE
## DECLARATORY JUDGMENT RELEASING SURETIES
## PURSUANT TO §8-3-13 OF THE CODE OF ALABAMA

43.     Plaintiffs reallege and incorporate paragraphs 1 through 42 hereinabove by reference.

44.     Section 8-3-13 of the Code of Alabama provides as follows:

§ 8-3-13.  Creditor required by surety to bring action against principal.

(a) A surety upon any contract for the payment of money or for the delivery or payment of personal property may require **the creditor** or anyone having the beneficial interest in the contract, by notice in writing, to bring an action thereon against the principal debtor or against any cosurety to such contract.

(b) If an action is not brought thereon in three months after the receipt of such notice and prosecuted with diligence according to the ordinary course of law, the surety giving such notice is **discharged from all liability as surety** or his aliquot proportion of the debt, as the case may be.

Code of Alabama, §8-3-13 (1975) (emphasis added).

45. Superior Bank was the creditor of the Loan assumed by CCLLC. Ellis also became the "creditor" of such Loan to CCLLC once he "bought" the Loan from Superior Bank on or about December 23, 2010.

46. In that capacity as creditor, Ellis and Superior were served with a demand by the sureties (Wiggins and Wolf Pup, LLC) that the creditor (Ellis and Superior) "bring an action … against the principal debtor" (CCLLC) for repayment of CCLLC's loan for the purchase of Wolf Bay Landings.

47. Superior Bank and Ellis subsequently refused to bring such an action as the creditor of the principal debtor, CCLLC, within the 90 days required by §8-3-13, thereby discharging Wolf Pup, LLC and Wiggins as sureties on such loan pursuant to such statute.

WHEREFORE, plaintiffs request entry of a judgment discharging and/or releasing them as sureties together with an award of attorney's fees and expenses for bad faith refusal to release the plaintiffs in the manner required.

## COUNT TWO
## DECLARATORY JUDGMENT, EXONERATION, QUIA TIMET AND SPECIFIC PERFORMANCE

48. Plaintiffs reallege and incorporate paragraphs 1 through 47 hereinabove by reference.

49. As already shown above, Ellis and CCLLC were subject to both an explicit contract which required them to pay-off the loan at issue **and** "an implied

agreement between the principal obligor and the secondary obligor that the principal obligor will perform the underlying obligation so that the secondary obligor will not have to perform the secondary obligation." Restatement (Third) of Suretyship & Guaranty, §21, Comment a.

50.    Upon entering the *Loan Assumption and Modification Agreement* with Superior Bank, Ellis and CCLLC became the "Borrower" and principal obligor on such loan.  Ellis and CCLLC executed agreements which defined the "Borrower" of such loan as "Frank Ellis, IV" and Character Counts, LLC.  *See* Exhs. 1 & 2 attached.

51.    As the "Borrower" defined in such agreements, Ellis and CCLLC contractually obligated themselves to "Wolf Pup [and] its members" to repay the loan to Superior Bank. *See* Exhibits 1 and 2 attached.  That agreement executed as part of the closing of CCLLC's Loan assumption required the following:

> 12. All indebtedness to Superior Bank shall be refinanced, or otherwise paid in full, on or before one (1) year from the date hereon, and the current guarantors thereof released, or the Borrowers shall be considered in default, and in default of the Loan Documents. (emphasis supplied)

*Membership Interest Pledge Agreement* at Section 12 ("*Pledge Agreement*"; attached hereto as Exhibit 1).

52.    Ellis and CCLLC subsequently satisfied and were released from any further obligation to repay such loan by all banks having any interest in its repayment, which included Superior Bank N.A. and Cadence Bank as the successor to Superior

Bank. Cadence Bank filed a formal "termination" of all security interests in the loan, mortgages and guaranties related to Wolf Bay Landings on June 26, 2014, including all remaining rights against Wolf Pup, Wiggins and CCLLC in regard to all such loans. *See* Exhibit 5. That satisfaction and release extinguished all rights and claims of each bank having any interest in the loan for Wolf Bay Landings that Ellis and CCLLC and specifically released Wolf Pup, LLC, Robert Wiggins, Frank Ellis and CCLLC from any and all obligation to such banks for such loan. *Id.* Ellis and CCLLC satisfied the loan for Wolf Bay Landing and were therefore contractually obligated to release Wolf Pup and Wiggins as guarantors/sureties as required by Ellis's and CCLLC's Repayment Agreement (Exh. 1) and Pledge Agreement (Exh. 2). The Repayment Agreement and Pledge Agreement require Defendants to satisfy the Wolf Pup Loan and obtain a release of the guarantees. Ellis and his LLC have continuously failed and/or refused to satisfy the loan or obtain a release of the plaintiff-guarantors.

53. As the Borrowers and primary obligors on the Wolf Bay Landings loan, Ellis and CCLLC cannot shift their bank debts to Wiggins or Wolf Pup LLC who are only secondary sureties. "As between the principal obligor and the secondary obligor, it is the principal obligor that should perform or bear the cost of performance." Restatement (Third) of Suretyship & Guaranty, §21, Comment, ¶a. Ellis and CCLLC, as the borrower, must pay their own debts under the common law doctrine of *quia*

*timet* and exoneration. "[T]he secondary obligor is entitled to the principal obligor's performance, not merely a cause of action for its failure to perform." Restatement (Third) of Suretyship & Guaranty, §21, Comment, ¶a. "Suretyship status gives the secondary obligor recourse against the principal obligor to cause the principal obligor to perform the underlying obligation or bear the cost of performance." Restatement (Third) of Suretyship & Guaranty, §18, ¶1.

54. Superior Bank's, Cadence Bank's and Ellis's unilateral modifications and extensions of the time for repayment of the loan breached the loan documents and operated to discharge Wiggins and Wolf Pup, LLC as sureties based on the rule of law that a surety is "discharged from liability" whenever an extension of the time and manner of payment is given by the mortgagee at the instance of the assuming debtor, and the original maker as a surety is not a party to such extension agreement, and has not consented thereto or ratified the same. Superior Bank, CCLLC, and Cadence Bank Ellis entered into a series of loans, modifications and extensions of the *Loan Assumption and Modification Agreement,* and impaired the collateral for such loan, all of which materially and adversely affected Wiggins' and Wolf Pup, LLC's interests without their knowledge or consent.

55. Superior Bank entered into an *Addendum to Fourth Amendment to Loan Documents* with CCLLC and ELLIS wherein Superior Bank modified the Maturity Date for CCLLC's and Ellis' repayment of the loan and increased the Loan's interest

rate despite Wiggins's and/or Wolf Pup LLC's lack of consent to such modifications and extensions of the time for repayment. Superior sent to Wolf Pup and Wiggins a letter stating that "[i]t is Superior Bank's understanding that you have elected not to execute your *Consent* to this [Fourth] Amendment . . . of the Loan." Such letter from Superior also stated that "[t]he Amendment served the sole purpose of extending the loan for a 1-year period and setting a 4% floor per annum on the [interest] rate."

56. The *Loan Assumption Agreement and Modification* agreed to by Superior Bank had a defined Maturity Date of March 22, 2008 for CCLLC to repay the loan in full. Such *Loan Assumption and Modification Agreement* states that "[i]t is the intent hereof to extend the Maturity Date to March 22, 2008" and that CCLLC would have an "option" to "further extend the Maturity Date . . . to September 22, 2008." *Loan Assumption and Modification Agreement*, ¶5 (n-p).

57. The *Loan Assumption and Modification Agreement* contained no provision for further extension or modification beyond September 22, 2008. On November 21, 2008, Superior Bank, Ellis and CCLLC unilaterally modified such Maturity Date by entering into a *Fourth Amendment to Loan Documents* without the knowledge of Wolf Pup or Wiggins. This undisclosed modification of the Maturity Date for CCLLC's repayment of the loan unilaterally extended the Maturity Date for an additional year from September 22, 2008 to September 29, 2009. *See Fourth Amendment to Loan Documents* dated November 21, 2008.

58.     Superior Bank thereafter unilaterally modified CCLLC's repayment obligation on several other occasions, including from September 22, 2009 to December 22, 2009, from the latter date to June 24, 2010, and then to August 15, 2010 and December 23, 2010.   On December 23, 2010, Superior Bank further modified CCLLC's repayment obligation unilaterally by selling such loan to CCLLC's owner, Frank Ellis IV, under terms that allow Ellis to decide when and if his LLC will have to repay the loan that it assumed from Wolf Pup LLC.  *See Loan Agreement of December 23, 2010.*

59.     Without Wolf Pup's or Wiggins' knowledge, on December 23, 2010, Ellis bought the Loan that had been assumed by CCLLC and guaranteed by Ellis from Superior Bank (with moneys borrowed from Superior Bank) and then unilaterally extended and modified CCLLC's loan obligation and maturity date for many years longer than Wolf Pup and Wiggins agreed to in the Loan Assumption and Modification Agreement, the Repayment Agreement, the Pledge Agreement and related loan documents.

60.     The *Loan Sale Agreement* between Superior, Ellis and CCLLC unilaterally imposed new terms that allow Ellis to decide when and if CCLLC will have to repay the Loan that it assumed as part of its purchase of Wolf Bay Landings. To finance the purchase of the Loan assumed by CCLLC, Ellis borrowed $16,046,575.20 from Superior Bank in his individual name pursuant to a Loan Sale

Agreement that split the Ellis debt between a recourse "Note A" in the amount of $10,700,000.00 and a non-recourse "Note B" in the amount of $5,346,575.20 for which Ellis is not personally liable. Wolf Bay Landings provides the only security for this nonrecourse loan "Note B." As such Wolf Bay Landings has been substantially impaired as collateral of the Loan.

61.     Ellis and Superior Bank extended the time for repayment of the "Note B" amount of $5,346,575.20 for four years until December 23, 2015 and extended the time for repayment of the Note A amount of $10,700,000 until January 10, 2033, which is an additional 22 years beyond what Wiggins and Wolf Pup LLC agreed to in the Loan Assumption and Modification Agreement and the related Pledge Agreement of October 5, 2007. Only monthly payments will be due on the principal of Note A during that 22 year period.

62.     Cadence Bank, Ellis and CCLLC continued to unilaterally extend the Maturity Date and time for repayment of the Wolf Bay Landings loan without the knowledge or consent of the plaintiffs after Cadence Bank succeeded to the interests of Superior Bank, thereby discharging the plaintiffs from any remaining obligations, if any, regarding such loan.

63.     All such modifications and extensions by Ellis, CCLLC, Superior Bank and Cadence Bank were put into effect without the knowledge or consent of Wiggins or Wolf Pup.

64.    In addition, Ellis's and CCLLC's *Fourth Amendment to Loan Documents* unilaterally increased the interest rate to a minimum of 4% without the knowledge or consent of Wolf Pup or Wiggins.

65.    The *Loan Assumption Agreement and Modification Agreement* between CCLLC and Superior Bank states "[i]t shall be a condition of the Loan that … CCLLC at all times shall incur no other debt other than the Loan and the subordinate debt to [Wolf Pup, LLC] set forth herein." Ellis and CCLLC altered such condition by securing five additional loans from Superior Bank that were secured by the same collateral already pledged to secure CCLLC's assumption of the original Wolf Pup Loan.  Wiggins and Wolf Pup did not know about or consent to the additional debt and loans from Superior Bank which Ellis and CCLLC borrowed and used Wolf Bay Landings as collateral for the five (5) loans and ultimately the Notes. Wolf Pup and Wiggins did not consent to such additional debts to be secured by Wolf Bay Landings as collateral. Wolf Bay Landings had already been used to secure the construction Loan, as such the Wolf Bay Landings collateral has been impaired.

66.    Ellis and CCLLC further impaired plaintiffs' rights as secondary obligors or subsureties of the primary obligor (CCLLC) when Ellis bought CCLLC's loan and when they entered into an agreement with Superior Bank to unilaterally release Ellis as a guarantor of the Loan. Ellis individually bought the Loan assumed by CCLLC for the purchase of Wolf Bay Landings, and part of that purchase money was his Note

B from Superior Bank which was also secured by the same collateral, Wolf Bay Landings. Ellis and Superior Bank unilaterally canceled Ellis's guaranty on the Wolf Pup Loan. The cancellation of the Ellis guaranties was not done with the knowledge, consent or ratification of Wolf Pup or Wiggins.

67.     Superior Bank's new loan with Ellis created a new "indebtedness" and/or contract not encompassed by Wiggins' guaranty contract and that breached the loan assumption agreements. The creation of this new indebtedness, without Wiggins' and Wolf Pup's knowledge or consent operated to discharge them from any further obligations.

WHEREFORE, plaintiffs request entry of (1) a declaratory judgment that they are discharged and released as sureties on the Wolf Bay Landings loan assumed by CCLLC and guaranteed by Ellis for the purchase of Wolf Bay Landings, plus interest, attorney fees and all other damages permitted at  law or equity; (2) specific performance of the contractual obligation of Frank Ellis, CCLLC, Superior Bank and Cadence Bank to release the plaintiffs as sureties for such loan and from all remaining obligations, if any, related to its repayment, together with attorney's fees and expenses for prosecution of such claim; and (3) exoneration from any such remaining obligations and/or a *quia timet* decree eliminating any such obligations and precluding any further effort to establish or collect upon such obligations.   .

## COUNT THREE
## BREACH OF CONTRACT

68.     Plaintiffs reallege and incorporate paragraphs 1 through 67 hereinabove by reference.

69.     As part of the *Loan Assumption and Modification Agreement*, each of the parties to that agreement simultaneously agreed to a parallel Repayment Agreement which required Ellis and CCLLC to repay any portion of the pledged collateral pledged by the plaintiffs that might be seized or applies to Ellis's or CCLLC's debt to Superior Bank for the purchase of Wolf Bay Landings. Specifically, Ellis and CCLLC agreed to do the following:

1.     Monthly Interest Payments. Borrower [CCLLC and Ellis] agrees to timely pay to Superior Bank all monthly interest payments in connection with the Indebtedness. Borrower agrees to take all steps necessary to ensure such interest reserve and pledged collateral are not seized or drawn upon by Superior Bank or otherwise applied to the Indebtedness and the interest reserve and interest thereon is returned to Wolf Pup .. . The parties acknowledge and agree that return to Wolf Pup of such interest reserve . ., as well as payment of the monthly interest payments, and the $17,500,000.00 purchase price paid by Borrower for Wolf Bay Landing Condominiums, are all consideration for this Agreement and the other contemporaneously executed documents,

2.     Interest Reserve. Borrower [CCLLC and Ellis] agrees to immediately repay to Wolf Pup any portion of the $560,000.00 interest reserve posted by Wolf Pup to Superior Bank to secure the Indebtedness (defined in the Superior Bank Loan Assumption and Modification Agreement executed by Borrower), together with interest thereon at the default rate defined in the Superior Bank documents, to the extent same is seized or drawn upon by Superior Bank or otherwise applied to such indebtedness.

* * *

      3.     Mutual Cooperation. The parties agree to mutually cooperate and assist each other in securing the release, by Superior Bank, of the interest reserve and pledged collateral referenced in Sections 2 and 3 above.

      4.     Pledge Agreement. Borrower agrees that the Membership Interest Pledge Agreement (the "Pledge Agreement") executed contemporaneously herewith shall also secure this Agreement; and that this Agreement shall be considered a Loan Document under the Pledge Agreement such that a default or breach hereof shall entitle Wolf Pup to the remedies upon default under the Pledge Agreement.

70.    Through such agreement, defendants Ellis and CCLLC, with actual knowledge by Superior Bank, contracted to repay Wiggins and Wolf Pup, LLC any money seized by Superior Bank from Wiggins or Wolf Pup, LLC's pledged collateral and interest reserve and accrued interest posted in connection with the Wolf Pup Loan assumed by Ellis and CCLLC to purchase Wolf Bay Landings.

71.    In an effort to "sanitize" its loan portfolio for bank regulators, Superior Bank conspired with Ellis CCLLC to wrongfully seize Wiggins' Certificate of Deposit and accrued interest, to convert said funds to reduce the principal obligation of the Ellis/CCLLC loan, so that Superior Bank could repackage and resell the reduced loan to Ellis. Superior Bank wrongfully seized the entirety of Wiggins' Certificate of Deposit and accrued interest.

72.    Superior Bank and Ellis wrongfully and intentionally, in contradiction to the terms of its contract, cashed, seized, converted or otherwise drew upon Wolf

Pup, LLC's interest reserve and accrued interest in an amount exceeding $560,000 from said interest reserve for the benefit of Ellis and CCLLC itself. The indebtedness of Ellis and CCLLC to Superior Bank was simultaneously reduced by that same amount, with Superior Bank putting in its own account over $2,000,000.00 (counting Wiggins CD). Upon information and belief Superior Bank converted these funds to avoid being taken over by FDIC. Notwithstanding that effort, Superior Bank's operations were subsequently seized by FDIC.

73. Wiggins and Wolf Pup, LLC made written demand on Ellis and CCLLC to "immediately repay" Wiggins's Certificate of Deposit and accrued interest pursuant to Ellis's and CCLLC's said repayment Agreement and Wolf Pup's interest reserve held by Superior Bank pursuant to its depositor agreement.

74. Ellis, CCLLC and Superior Bank have breached such repayment Agreement and depositor agreement by refusing to repay such funds plus accrued interest that were seized and applied for their mutual benefit.

75. Ellis and CCLLC also breached the other terms of the Repayment Agreement and incorporated Pledge Agreement that Ellis and CCLLC entered to induce Wiggins and Wolf Pup, LLC to post such pledged collateral and interest reserve with Superior Bank. Such Repayment Agreement required Ellis and CCLLC to take all steps necessary to ensure that such interest reserve was not seized or drawn upon by Superior Bank or otherwise applied to the indebtedness assumed by Ellis and

CCLLC as the purchase price for Wolf Bay Landings. Furthermore, Ellis and CCLLC are contractually obligated to mutually cooperate and assist in securing the release of such funds and other obligations connected with the Wolf Pup Loan assumed by CCLLC for purchase of Wolf Bay Landings. Superior Bank conspired with and aided and abetted Ellis and CCLLC in these endeavors and breached its depositor agreement with Wolf Pup when it converted and seized Wolf Pup's moneys at deposit at Superior Bank and Wiggins's CD.

76.     Ellis and CCLLC also breached the foregoing contact "to mutually cooperate and assist each other in securing the release, by Superior Bank, of the interest reserve and pledged collateral referenced in Sections 2 and 3 above."

77.     As the "Borrower" defined in the loan documents, Ellis and CCLLC further obligated themselves to "Wolf Pup [and] its members" to repay the loan to Superior Bank. *See* Exhibits 1 and 2 attached.  That agreement executed as part of the closing of CCLLC's Loan assumption required the following:

> 12. All indebtedness to Superior Bank shall be refinanced, or otherwise paid in full, on or before one (1) year from the date hereon, and the current guarantors thereof released, or the Borrowers shall be considered in default, and in default of the Loan Documents. (emphasis supplied)

*Membership Interest Pledge Agreement* at Section 12 ("*Pledge Agreement*"; attached hereto as Exhibit 1).

78.     Ellis and CCLLC subsequently satisfied and were released from any

further obligation to repay such loan by all banks having any interest in its repayment, which included Superior Bank N.A. and Cadence Bank as the successor to Superior Bank. *See* Exhibit 5 attached hereto. That satisfaction and release extinguished all rights and claims of each bank having any interest in the loan for Wolf Bay Landings that Ellis and CCLLC and specifically released Wolf Pup, LLC, Robert Wiggins, Frank Ellis and CCLLC from any and all obligation to such banks for such loan. *Id.* Having satisfied and been released from the loan for Wolf Bay Landing, Ellis and CCLLC were contractually obligated to release Wolf Pup and Wiggins as guarantors/sureties as required by Ellis's and CCLLC's Repayment Agreement (Exh. 1) and Pledge Agreement (Exh. 2).

79.     The *Loan Assumption and Modification Agreement* similarly contained a defined maturity date of one year with no provision for unilateral extensions or modifications beyond that year. Nonetheless, Ellis, CCLLC, Superior Bank and Cadence Bank breached such contract by and unilaterally extending the maturity date several times.

80.     The Loan Assumption and Modification Agreement between CCLLC and Superior Bank, to which Wiggins and Wolf Pup agreed, provided that CCLLC would incur no debt other than the loan to buy Wolf Bay Landings and subordinate debt to Wolf Pup. In spite of this provision, Superior Bank extended five additional loans secured by the same collateral already pledged to secure CCLLC's assumption

38

of the original loan and the related note to Wolf Pup to purchase Wolf Bay Landings. Plaintiffs did not know about or agree to the additional debt, nor did they agree to that debt being secured by collateral already pledged to secure CCLLC's note to Wolf Pup.

81.     Superior Bank impaired plaintiffs' rights as secondary obligors or sub-sureties of CCLLC when Superior Bank released Ellis as the guarantor of the debt for Wolf Bay Landings, without the knowledge or consent of plaintiffs.  The contractual provisions were designed to protect Wiggins and Wolf Pup, and the collateral originally pledged for the loan for Wolf Bay Landings and were included to induce their agreement and for Wolf Pup to consent as a signatory to the Loan Assumption and Modification Agreement at issue.

82.     The foregoing acts and omissions of the defendants further breached their implied-in-law duty of good faith and fair dealing and breached their fiduciary duties.

83.     The breach of the foregoing contractual provisions, without the knowledge or consent of plaintiffs, who either signed or consented to the contract at issue, caused monetary harm to the plaintiffs.

WHEREFORE, plaintiffs request entry of a judgment for: (1) the full amount of funds applied by Superior Bank for the benefit of Ellis and CCLLC, which is believed to be more than $2,500,000.00 and for accrued interest thereon since

December 23, 2010 at the agreed-upon default interest rate set forth in the loan documents assumed and executed by Ellis and CCLLC in connection with their purchasing and financing of Wolf Bay Landings; (2) damages for the foregoing breach of contract and breach of the implied covenant of good faith and fair dealing committed by defendants Frank Ellis, CCLLC, Superior Bank and Cadence Bank, including, but not limited to, all damages incurred from such defendants' failure to timely release the plaintiffs from the Wolf Bay Landings loan and their parallel efforts to extend such loan beyond the agreed-upon loan Maturity Date and time for repayment and to take, apply or otherwise benefit from the use of plaintiffs' deposited funds for their own benefit; and (3) specific performance of such contracts and agreements. Plaintiffs also demand attorneys' fees and all other damages permitted in law or equity.

## COUNT FOUR
## BREACH OF IMPLIED-IN-LAW
## DUTY OF GOOD FAITH AND FAIR DEALING

84. Plaintiffs reallege and incorporate paragraphs 1 through 83 hereinabove by reference.

85. The foregoing acts and omissions of the defendants constitute a breach of the implied-in-law duty of good faith and fair dealing including, without limitation, the duty not to interfere with the rights of Wiggins and Wolf Pup.

WHEREFORE, plaintiffs request entry of a judgment for (1) the full amount

40

of funds applied for the benefit of Ellis, Superior Bank, and Cadence Bank and CCLLC, and for accrued interest thereon since December 23, 2010 at the agreed-upon default interest rate set forth in the loan documents assumed and executed by Ellis and CCLLC in connection with their purchasing and financing of Wolf Bay Landings; (2) damages for the foregoing breach of contract and breach of the implied covenant of good faith and fair dealing committed by defendants Frank Ellis, CCLLC, Superior Bank and Cadence Bank, including, but not limited to, all damages incurred from such defendants' failure to timely release the plaintiffs from the Wolf Bay Landings loan and their parallel efforts to extend such loan beyond the agreed-upon loan Maturity Date and time for repayment and to take, apply or otherwise benefit from the use of plaintiffs' deposited funds for their own benefit; and (3) specific performance of such contracts and agreements. Plaintiffs also demand attorneys' fees and all other damages permitted in law or equity.

## COUNT FIVE
## COMPLAINT FOR MONEY PAID BY WIGGINS AND WOLF PUP LLC FOR DEFENDANTS' BENEFIT AND BREACH OF CONTRACT

86.     Wiggins and Wolf Pup LLC reallege and incorporate paragraphs 1 through 85, hereinabove by reference.

87.     Defendants owe the plaintiffs the full amount of the plaintiffs' funds that were wrongfully seized and applied to the Wolf Bay Landings loan and property.

Such defendants also owe the plaintiffs interest on such funds since the date such funds were seized and/or benefitted them.

88.     Ellis and CCLLC have also breached their contract to repay Wiggins and Wolf Pup all funds seized and converted from such Certificate of Deposit and accrued interest reserve. Ellis and CCLLC have failed and/or refused to "immediately repay" Wolf Pup and Wiggins for such confiscated and converted funds together with interest due of such funds since such confiscation.

WHEREFORE, plaintiffs request entry of a judgment for the full amount of funds applied by Superior Bank for the benefit of Ellis and CCLLC, and for accrued interest thereon since December 23, 2010 at the agreed-upon default interest rate set forth in the loan documents assumed and executed by Ellis and CCLLC in connection with their purchasing and financing of Wolf Bay Landings.  Plaintiffs also demand attorneys' fees and all other damages permitted in law or equity.

## COUNT SIX
## BREACH OF IMPLIED-IN-LAW
## DUTY OF GOOD FAITH AND FAIR DEALING

89.     Wiggins and Wolf Pup reallege and incorporate paragraphs 1 through 88 hereinabove by reference.

90.     The defendants' foregoing acts and omissions breached the implied-in-law duty of good faith and fair dealing generally, as well as those same duties that were part of the Repayment Agreement, Pledge Agreement, Loan Assumption and

Modification Agreement, and Superior Bank's depositor agreement and other agreements and understandings connected therewith including, without limitation, the duty not to interfere with the rights of the Wiggins and Wolf Pup, LLC that were part of such agreements and understandings.

WHEREFORE, Wiggins and Wolf Pup request entry of a money judgment plus: (a) accrued interest since December 23, 2010 at the agreed upon default interest rate set forth in Superior Bank's underlying loan documents; and (b) attorney's fees and expenses for bad faith interference with the rights of Wiggins and Wolf Pup LLC.

## COUNT SEVEN
## DAMAGES FOR BREACH OF FIDUCIARY DUTY

91.     Wiggins and Wolf Pup reallege and incorporate paragraphs 1 through 90 hereinabove by reference.

92.     Superior Bank had a fiduciary duty to Wolf Pup and Wiggins to maintain Wolf Pup's and Wiggins' funds on deposit pursuant to the depositor agreement. Superior Bank breached its fiduciary duty to its depositors, Wiggins and Wolf Pup, when it converted and seized their funds contrary to contracts that were known by Superior Bank.

93.     This breach of fiduciary duty was conducted by Superior Bank in an effort to improve Superior Bank's financial condition. As such, this breach was an intentional, willful act.

WHEREFORE, as a result of Superior Bank's breach of fiduciary duty and as a result of Superior Bank's willful and intentional acts, Wiggins and Wolf Pup have been damaged and are entitled to compensatory, exemplary and punitive damages plus interest and attorney's fees.

## COUNT EIGHT
## CONVERSION

94.     Wiggins and Wolf Pup reallege and incorporate paragraphs 1 through 93 hereinabove by reference.

95.     Defendants converted Wolf Pup's Interest Reserve and Wiggins' Certificate of Deposit and accumulated interest thereon and have refused to return such property and/or identifiable funds to Wolf Pup and Wiggins.

96.     Defendants Ellis, Superior Bank, CCLLC, Cadence Bank, Mihyon Ellis, Trinity Retreats, LLC and Bryant Bank also converted plaintiffs' property and security interests embodied in plaintiffs' Membership Interest Pledge Agreement, Repayment Agreement, UCC Financing Statements, Certificate of Deposits, Interest Reserve, as well as plaintiffs' security interests in Ellis's and CCLLC's contractual obligation to repay the Wolf Bay Landings loan and all funds that were deposited for and/or applied to such loan.

97.     The *Membership Interest Pledge Agreement* executed by Ellis was recorded as a security interest pursuant to the Financing Statement filed under the

Uniform Commercial Code. *See* Exhibits 1-3, 6. That agreement pledged all of Frank Ellis's membership interests in CCLLC to Wolf Pup LLC and its members as security to assure repayment of the loan that CCLLC and Ellis assumed as the means of purchasing Wolf Bay Landings from Wolf Pup. *Id.* Ellis also secured his loan repayment obligation in ¶12 of such *Pledge Agreement* by contractually agreeing to pay-off the loan and release the plaintiffs as sureties "on or before one (1) year from the date herein." Exhibit 1, ¶12.

98.     Superior Bank subsequently failed and was taken over by the FDIC as Receiver. The FDIC assigned all of Superior Bank's rights and interests in the Wolf Bay Landings loan to a new entity, Superior Bank N.A., and that entity was later purchased by and merged with Cadence Bank. Ellis and Cadence Bank then joined together to interfere with, convert and/or unilaterally subordinate the superior security interests and repayment rights belonging to Wolf Pup, LLC and its members by having Ellis "foreclose" on CCLLC's ownership of Wolf Bay Landings and to then sell the foreclosed property to Ellis's wife, Mihyon Ellis, acting in the guise of a new single-asset LLC named Trinity Retreats, LLC.

99.     Ellis's foreclosure on his own LLC's interest in Wolf Bay Landings and resale to his wife's LLC was a sham transaction jointly structured and executed by Cadence Bank, Frank Ellis, Mihyon Ellis, Trinity Retreat, LLC and Bryant Bank. Bryant Bank joined in such conspiracy and wrongful conduct by financing such

foreclosure and sale in exchange for a mortgage on the Wolf Bay Landings property that was already subject to the pledge that Ellis and CCLLC executed in favor of Wolf Pup, LLC and Wiggins. Rather than simply obtaining the same refinancing to satisfy the Wolf Bay Landings loan in the straightforward manner required by Ellis's and CCLLC's *Pledge Agreement*, *Repayment Agreement* and *Loan Assumption Agreement*, Ellis and CCLLC conspired with Cadence Bank, Bryant Bank, Mihyon Ellis and Trinity Retreats, LLC to "foreclose" on the Wolf Bay Landings property and CCLLC membership interests that were already pledged to the plaintiffs as a means of obtaining  the release of Ellis and CCLLC from any further loan repayment obligations for the Wolf Bay Landings loan while still preserving the litigation claims that Ellis and CCLLC had pending against Wolf Pup, LLC and Wiggins, Ellis, Cadence Bank and CCLLC agreed to split all litigation proceeds between them, as shown by the assignment of such litigation proceeds. For this purpose, the defendants joined and conspired together to attempt to shift Ellis's and CCLLC's loan repayment obligations to the plaintiffs and to take ownership of Wolf Bay Landings from Wolf Pup, LLC and its members without ever paying the agreed-upon purchase price for such sale.

100.   The defendants joined with each other in a scheme to avoid performance of Ellis's and CCLLC's contractual obligation to pay-off the loan purchase of Wolf Bay Landings and release the plaintiffs from such loan by having Ellis foreclose on

CCLLC's ownership of Wolf Bay Landings, and sell such property to his wife's LLC's (Trinity Retreats, LLC), without paying-off the loan for such property or releasing the plaintiffs as required by Ellis's *Pledge Agreement* to the plaintiffs.

101.   Superior Bank, Ellis and CCLLC took, converted, interfered  with, attempted to unilaterally subordinate and otherwise injured plaintiffs' superior security interest set forth in the *Membership Interest Pledge Agreement*, the *Repayment Agreement*, the UCC Financing Statement and the loan documents as a whole.

102.   Defendants Frank Ellis, Mihyon Ellis, Cadence Bank and Bryant Bank also acted and conspired together to take, convert, interfere with, unilaterally subordinate and otherwise injure plaintiffs' earlier-filed security interest in  CCLLC and its assets, as well as the parallel pledge by Ellis and CCLLC to repay the underlying loan for Wolf Bay Landings in full.  Without plaintiffs' knowledge or consent, such defendants acted and conspired together to take ownership of the collateral pledged to the plaintiffs as security for Ellis's repayment of the loan for such defendants' and CCLLC's purchase of Wolf Bay Landings by having Frank Ellis "foreclose" on the very same property he had pledged to the plaintiffs and which secured his obligation to repay that loan in full and then pretend to sell such property to his wife, Mihyon Ellis, through her newly formed LLC, Trinity Retreats, LLC.

103.   Such foreclosure was effectuated jointly by defendants Frank Ellis,

Mihyon Ellis, Trinity Retreats LLC, Cadence Bank and Bryant Bank. Each of such

defendants was on notice of plaintiffs' earlier filed security interest in the foregoing

collateral but attempted to insulate themselves from such knowledge and liability by

having Frank Ellis execute a false representation warranting that he had full authority

to act on behalf of CCLLC as a part of such transaction and foreclosure. Frank Ellis

executed a written warranty to Cadence Bank on May 1, 2014 which "represents and

warrants that . . . all company action required to be taken by Character Counts and its

partners, members, managers, officers, directors and/or stockholders for the

authorization, execution, delivery and performance of this Agreement and any other

documents contemplated hereby have been taken." *Second Settlement Agreement* at

14, ¶30. Such representation and warranty was known to be false when made because

the defendants were on notice that Ellis had previously pledged and/or assigned all

such membership interests in CCLLC to Wolf Pup LLC and its members in the

*Membership Interest Pledge Agreement* that he executed and recorded in a UCC

Financing Statement in 2007. *See* Exhibits 1-3, 6 hereto. Frank Ellis had also

executed documents assigning the membership interests in CCLLC to Wolf Pup LLC

and its members in the *Transfer and Assignment Agreement* that he executed in 2007.

*See* Exhibit 3 attached hereto. Each of the defendants were on notice that Frank Ellis

had previously pledged his membership interests in CCLLC to Wolf Pup LLC in

2007 and recorded such pledge in a UCC Financing Statement that remained valid

from 2007 through the present. Defendants therefore knew that Ellis's representations and warranty that he had authority to act on behalf of CCLLC and to foreclose Wolf Bay Landings were false when made and violated his earlier-filed pledges to the plaintiffs. Notwithstanding such notice and knowledge of Wolf Pup LLC's superior security interest in the membership interests of CCLLC and in the Wolf Bay Landings collateral, the defendants acted together and conspired to take, interfere with, convert, secretly attempt to subordinate, and otherwise injure plaintiffs' superior interest in CCLLC and the Wolf Bay Landings collateral. Defendants took such action without disclosing or giving notice to Wolf Pup LLC or its members of any such actions or events which took, foreclosed, interfered with, converted, and otherwise attempted to unilaterally subordinate plaintiffs' security interest in such collateral, property and transactions.

104. The written warranty that Frank Ellis gave to Cadence Bank on May 1, 2014 also "represents and warrants that . . . the person executing this Agreement and all other documents and agreements that are reasonably necessary or incidental to fulfill the objectives of this Agreement on behalf of Character Counts is an authorized representative of Character Counts with authority to bind Character Counts on his or her own and without additional persons or signatures." *Second Settlement Agreement* at 14, ¶30. Such representation and warranty was false when made because Ellis had previously pledged and/or assigned all such membership interests in CCLLC to Wolf

Pup LLC and its members in the Membership Interest Pledge Agreement that he executed and recorded in a UCC Financing Statement in 2007. Exhibits 1 & 6 hereto. The defendants were on notice that Frank Ellis had previously pledged his membership interests in CCLLC to Wolf Pup LLC in 2007 and recorded such pledge in a UCC Financing Statement that remained valid from 2007 through the present. Defendants therefore knew that Ellis's representations and warranty that he had authority to act on behalf of CCLLC and to foreclose Wolf Bay Landings were false when made and violated his earlier-filed pledges to the plaintiffs. Notwithstanding such notice and knowledge of Wolf Pup LLC's superior security interest in the membership interests of CCLLC and Wolf Bay Landings collateral for the loan at issue, the defendants acted together and conspired to take, interfere with convert, secretly attempt to subordinate, and otherwise injure plaintiffs' superior interest in CCLLC and the Wolf Bay Landings collateral. Defendants took such action without disclosing or giving notice to Wolf Pup LLC or its members of any such actions or events which took, interfered with, converted, attempted to unilaterally subordinate or otherwise adversely affected the plaintiffs' security interests in such collateral, property and transactions.

105. Cadence Bank was actively involved in planning and executing such actions and foreclosure, and it ultimately received more than five million dollars of the resulting proceeds. Bryant Bank was also actively involved in the planning and

execution of such foreclosure, including financing the sham sale to Mihyon Ellis and Trinity Retreats, LLC which took, converted, interfered with or attempted to unilaterally subordinate the plaintiffs' superior security interest in CCLLC and its assets. Bryant Bank was the recipient of the Wolf Bay Landings collateral that was subject to plaintiffs' earlier-filed security interest.

WHEREFORE, as a result of defendants' conversion of funds defendants are liable to Wolf Pup and Wiggins for all property and funds converted plus interest, exemplary and punitive damages plus interest and attorney's fees.

## COUNT NINE
## CONSPIRACY, AIDING AND ABETTING

106. Wolf Pup and Wiggins reallege and incorporate paragraphs 1 through 105 hereinabove by reference.

107. All defendants conspired with and aided and abetted each other in the manner set forth above, including, but not limited to, converting Wolf Pup's and Wiggins' property and breaching the various agreements between the parties to Wolf Pup's and Wiggins' detriment. As a result of such wrongdoing, defendants are liable to Wiggins and Wolf Pup.

WHEREFORE, plaintiffs demand compensatory, exemplary and punitive damages, plus interest and attorney's fees.

## COUNT TEN
## UNJUST ENRICHMENT

108. Wolf Pup and Wiggins reallege and incorporate paragraphs 1 through 107 hereinabove by reference.

109. The defendants' conduct described hereinabove constitutes unjust enrichment and the plaintiffs have been damaged as a result.

WHEREFORE, plaintiffs demand compensatory, exemplary and punitive damages, plus interest and attorney's fees.

## COUNT ELEVEN
## TORTIOUS INTERFERENCE WITH A PROTECTED
## BUSINESS RELATIONSHIP

110. Plaintiffs reallege and incorporate paragraphs 1 through 109 hereinabove by reference.

111. Based on the facts alleged hereinabove, the plaintiffs had a business relationship with Frank Ellis and CCLLC which was protected by the *Membership Interest Pledge Agreement* (Exh. 1), the *Repayment Agreement* (Exh. 2), the *Transfer and Assignment Agreement* (Exh. 3), the security interests recorded in plaintiffs' favor under the UCC (Exh. 6), and the overall loan documents for the Wolf Bay Landings loan (Exhs. 1-4), all of which secured and protected the plaintiffs from Frank Ellis and CCLLC defaulting on their contractual obligation to repay the loan they assumed as the means of purchasing Wolf Bay Landings from Wolf Pup LLC

and its members.

112.   Defendants Trinity Retreats, LLC, Mihyon Ellis, Cadence Bank, Bryant Bank were strangers to such contracts and business relationships between the plaintiffs, Frank Ellis and CCLLC in 2007-2011.  Trinity Retreats, LLC did not exist at that time.  Trinity Retreats, LLC and its owner, Mihyon Ellis, also purchased Wolf Bay Landings from her husband, Frank Ellis, pursuant to an agreement which restricted such sale to "third parties." *See* Exh. 4. Cadence Bank contends that  it too was not a party to the contracts and agreements between the plaintiffs, Frank Ellis and CCLLC in 2007-2011.

113.   Defendants Mihyon Ellis, Trinity Retreats, LLC, Cadence Bank and Bryant Bank were on notice of and knew about the foregoing contracts and agreements which created such protected business relationship between the plaintiffs, Frank Ellis and CCLLC.  Such contracts and agreements were recorded as part of Financing Statements filed under the Uniform Commercial Code and were referred to in other documents and conversations to which Mihyon Ellis, Trinity Retreats, LLC, Cadence Bank and Bryant Bank were privy.

114.   The latter defendants intentionally interfered with plaintiffs' agreements and business relationships with Frank Ellis and CCLLC set forth hereinabove by: (a) planning and participating in foreclosure on the collateral pledged to the plaintiffs to secure Frank Ellis's and CCLLC's contractual obligation to repay the loan on Wolf

Bay Landings; (b) planning and participating in actions to unilaterally and involuntarily subordinate or otherwise take or interfere with plaintiffs' earlier-filed security interests in such collateral; (c) planning and participating in transactions that injured such collateral and the membership interests and assets of CCLLC without the knowledge or consent of the plaintiffs as the parties to which such membership interests were pledged and/or assigned; (d) planning and participating in Frank Ellis's actions taken on behalf of CCLLC which reduced or eliminated CCLLC's assets and value without authorization; (e) accepting representations warranting Frank Ellis's authority to act unilaterally on CCLLC's behalf which were known to be false and contrary to Ellis's pledge of such membership interests to Wolf Pup, LLC and its members; and (f) conspiring with and aiding, abetting Frank Ellis and CCLLC in refusing to pay-off the loans they assumed as the purchase price for Wolf Bay Landings as required by their contracts with the plaintiffs set forth in Exhibits 1-4 and 6.

115. Plaintiffs were damaged by the foregoing intentional interference with their contracts and protected business relationships with Frank Ellis and CCLLC. Such injury included, but was not limited to, the loss and/or impairment of (a) plaintiff's earlier-filed security interests in such collateral; (b) Ellis's and/or CCLLC's repayment of their loan for Wolf Bay Landings; (c) plaintiffs' release from all obligations as a surety or guaranty for such loan; (d) repayment of Wiggins'

certificate of deposit and Wolf Pup's interest reserve, together with accumulated interest therein; and (e) extensive attorney's fees and expenses paid in an effort to mitigate such injuries and protect against such tortious interference.

116. To the extent that Frank Ellis has asserted that he was a stranger to the Loan Assumption and Modification Agreement, the plaintiffs plead, in the alternative: (1) the existence of a protectable business relationship between a) Wiggins and CCLLC and b) Wolf Pup, LLC and CCLLC; (2) of which Ellis was aware; (3) to which Ellis claims to be a stranger; (4) with which Ellis intentionally interfered; and (5) which caused damages to Wiggins and Wolf Pup, LLC.

WHEREFORE, plaintiffs request entry of a judgment for the full amount of funds necessary to fully compensate the plaintiffs, plus entry of judgment for any and all consequential damages, attorneys' fees and punitive damages.

## COUNT TWELVE
### DECLARATORY JUDGMENT AND ORDER SETTING ASIDE SALE, FORECLOSURE AND MORTGAGE; DAMAGES FOR IMPAIRMENT OF SUCH COLLATERAL

117. Plaintiffs reallege and incorporate paragraphs 1-116 hereinabove by reference as part of this cause of action.

118. Plaintiffs' rights and security interests set forth above were recorded in a UCC Financing Statement several years before the security interests, if any, that the defendants relied upon in taking, foreclosing upon, selling or otherwise alienating,

interfering with or involuntarily subordinating the collateral pledged to the plaintiffs pursuant to plaintiffs' earlier-filed security interests. As such, the defendants acted wrongfully in derogation of plaintiffs' superior security interests in such collateral and property.

Wherefore, plaintiffs request: (1) entry of a declaratory judgment and order setting aside the defendants' sale, foreclosure, mortgage and related transactions necessary to vindicate and restore plaintiffs' superior interest in the collateral pledged to plaintiffs to secure Ellis's and CCLLC's contractual obligation to repay the Wolf Bay Landings loan and release the plaintiffs from such loan; and (2) damages for impairment and/or alienation of such collateral, including, but not limited to, return of all funds paid for such property and/or collateral in relation to the wrongful foreclosure and sale which took, interfered with, subordinated or otherwise adversely affected property that was pledged to the plaintiffs to secure plaintiffs' repayment rights set forth above.

## COUNT THIRTEEN
## PROMISSORY ESTOPPEL AND/OR FRAUD

119. Plaintiffs reallege and incorporate paragraphs 1-118 by reference as part of this cause of action.

120. Based on all of the foregoing facts and circumstances, plaintiffs relied to their detriment on the promises and representations of Ellis, CCLLC and Superior

Bank that (a) the purchase price of Wolf Bay Landings was being paid to the plaintiffs by Ellis's and CCLLC's assumption and repayment of the loan on such property; (b) that Ellis and CCLLC were replacing Wolf Pup, LLC as the sole Borrower and Debtor on such loan; (c) that the loan was set to mature and be repaid in full by Ellis and CCLLC within one year of such assumption and/or would be fully repaid within that period; (d) the plaintiffs were only a secondary surety on such loan assumption for a period of one year and were set to be released from such loan within that one year period, and would, in fact, be released within that year; (e) Wiggins' Certificate of Deposit and accumulated interest and Wolf Pup's Interest Reserve and accumulated interest would be returned within one year as a part of their release as secondary sureties for such loan; (f) plaintiffs' release and repayment rights were secured by the rights and interests conveyed by Ellis's and CCLLC's Membership Interest Pledge Agreement, Repayment Agreement and recoupment rights as secondary sureties; (g) such security interests were recorded and protected by the filing of UCC Financing Statements that have priority over later-filed security interests; and (h) the Maturity Date for repayment of the loan would not be extended beyond the one year period set forth in such agreements and the Loan Assumption and Modification Agreement.

121.    Defendants Ellis, CCLLC, Superior Bank and Cadence Bank failed and/or refused to fulfill such promises and commitments and injured the plaintiffs in

the manner shown hereinabove.

122. Defendants' Ellis, CCLLC and Superior Bank knew that such representations and promises were false when made and that they did not intend to perform by timely paying off the loan and releasing the plaintiffs from such loan within one year and/or by protecting plaintiffs' deposited funds from forfeiture.

WHEREFORE, plaintiffs' request: (1) entry of a declaratory judgment that such defendants are precluded as a matter of promissory estoppel from asserting that plaintiffs remain liable for any portion of the Wolf Bay Landings loan and from failing to repay plaintiff Wiggins for his Certificate of Deposit and accumulated interest and failing to repay Wolf Pup, LLC for its Interest Reserve and accumulated interest in the manner required by the foregoing promises and commitments; and (2) compensatory and punitive damages for such fraudulent misrepresentations.

## RELIEF

Plaintiffs pray for the following relief:

(1)     That they be released as sureties on all loans related to Wolf Bay Landing;

(2)     That a money judgment be entered against Superior Bank, Ellis and CCLLC for the $1,500,000 Certificate of Deposit Wiggins deposited with Superior Bank, plus accrued interest, default interest, pre-judgment interest and attorneys' fees and expenses;

(3)     That a money judgment be entered against Ellis, CCLLC and Superior Bank for the $560,000.00 Wolf Pup interest reserve that was on deposit at Superior Bank plus all accrued interest, default interest, pre-judgment interest and attorney's fees and expenses;

(4)     That a money judgment be entered for the damages alleged in each Count pled hereinabove;

(5)     That exemplary and punitive damages in the amount of nine (9) times the damages awarded in the preceding paragraphs;

(6)     And that all further relief, both general and special, be awarded as mandated by the premises and as justice may require, including an award of attorney's fees and expenses.

Respectfully submitted,

*s/Rocco Calamusa, Jr.*
Rocco Calamusa, Jr.
Dennis G. Pantazis
Wiggins, Childs, Pantazis, Fisher
   & Goldfarb
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500

CO-COUNSEL:
W. Lee Pittman
J. Chris Cochran
PITTMAN, DUTTON & HELLUMS, P.C.
2001 Park Place North, Suite 1100
Birmingham, Alabama 35203
Telephone: (205) 322-8880

Plaintiffs hereby demand a struck jury for the trial in this cause.

/s/ Rocco Calamusa, Jr.
OF COUNSEL

Plaintiffs request that the Defendants be served by Certified Mail.

/s/ Rocco Calamusa, Jr.
OF COUNSEL

**Defendants' Addresses:**

Mihyon Ellis
8900 Toler Lane, #B102
Foley, Alabama 36535

Trinity Retreats, LLC.
8900 Toler Lane, #B102
Foley, Alabama 36535

Cadence Financial Corporation
c/o Registered Agent
CSC Lawyers Incorporating SRV, Inc.
150 S. Perry Street
Montgomery, Alabama 36104

Bryant Bank
1550 McFarland Blvd. North
Tuscaloosa, Alabama 35406

## CERTIFICATE OF SERVICE

I do hereby certify that on the 22nd day of February, 2016, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to the following:

John D. Herndon
Huie, Fernambucq & Stewart, LLP
Three Protective Center
2801 Highway 280 South, Suite 280
Birmingham, Alabama 35223
E-mail: jherndon@huielaw.com

Clark R. Hammond
Samuel T. Sessions
Wallace, Jordan, Ratliff & Brandt, LLC
Suite 400, 800 Shades Creek Parkway
Birmingham, Alabama 35209
Telephone: 205/870-0555, Facsimile: 205/874-3240
E-mail: chammond@wallacejordan.com
E-mail: ssessions@wallacejordan.com

Randall H. Sellers
Robert P. MacKenzie III
Tabor R. Novak, III
STARNES DAVIS FLORIE LLP
100 Brookwood Place, 7th Floor
P.O. Box 598512
Birmingham, Alabama 35259-8512
Telephone: (205) 868-6000, Fax: (205) 868-6099
E-mail: rhs@starneslaw.com
E-mail: RPM@starneslaw.com
E-mail: tnovak@starneslaw.com

*s/Rocco Calamusa, Jr.*
Of Counsel