FILED

2016 Mar-08  PM 03:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

## LOAN ASSUMPTION AND MODIFICATION AGREEMENT

THIS AGREEMENT ("Agreement") made effective as of the 5th day of October, 2007, by and among SUPERIOR BANK, a federal savings bank (formerly known as The Bank, a federal savings bank, successor by way of merger to The Bank, an Alabama banking corporation – herein the "Lender"), WOLF PUP, LLC, an Alabama limited liability company (the "Borrower"), and CHARACTER COUNTS, LLC, an Alabama limited liability company ("CCLLC"), with the consent of Linda J. Peacock, Joseph Scott Raley, Kelly D. Schuck, Robert L. Wiggins, Jr. and Frank P. Ellis, IV, as guarantors.

WHEREAS, in connection with a loan from Lender to Borrower in the principal amount of $6,000,000.00 (the "Acquisition Loan"), Borrower executed and delivered to Lender, among other documents (collectively, the "Acquisition Loan Documents"), the following documents dated September 30, 2005: (i) Promissory Note in the amount of $4,500,000.00 (the "$4.5MM Note"); (ii) Promissory Note in the amount of $1,500,000.00 (the "$1.5MM Note"), (iii) Loan Agreement (the "Acquisition Loan Agreement"); (iv) Future Advance Mortgage, Assignment of Rents and Leases, and Security Agreement, recorded at Instrument No. 928514, Probate Office of Baldwin County, Alabama (the "Original Mortgage"); (v) an Assignment and Security Agreement (the "First Security Agreement"); (vi) an Assignment of Contract Documents (the "First Assignment of Contracts"); and (vii) UCC Financing Statements. The Acquisition Loan was further secured by the Continuing Guaranties dated September 30, 2005 (individually a "First Guaranty" and collectively, the "First Guaranties") of Linda J. Peacock, Joseph Scott Raley, Kelly D. Schuck, Robert L. Wiggins, Jr. (individually a "Original Guarantor" and collectively, the "Original Guarantors"); and

WHEREAS, in connection with a $15,988,204.00 construction loan (the "Construction Loan") to the Borrower for the construction of a 62-unit condominium (the "Project") on the Mortgaged Property described in the Mortgage (herein, the "Mortgaged Property"), the Acquisition Loan was increased and modified by the following documents dated December 22, 2005 (the "Construction Loan Documents): (i) $15,988,204.00 Promissory Note, which amended, restated and replaced in its entirety the $4.5MM Note (the "$15.9MM Note"); (ii) First Amendment to Future Advance Mortgage, Assignment of Rents and Leases and Security Agreement, recorded at Instrument No. 950888, Probate Office of Baldwin County, Alabama (the Original Mortgage, as amended by the referenced First Amendment, is referred to herein as the "Mortgage"); (iii) Loan Modification Agreement and Amendment to Loan Documents (the "Loan Modification Agreement"); (iv) Construction Loan Agreement (attached to the referenced Loan Modification Agreement – herein the "Construction Loan Agreement"); (v) Assignment and Security Agreement (the "Second Security Agreement" – the First Security Agreement and the Second Security Agreement are collectively referred to herein as the "Security Agreement"); (vi) an Assignment of Contract Documents (the "Second Assignment of Contracts" – the First Assignment of Contracts and the Second Assignment of Contracts are collectively referred to herein as the "Assignment of Contracts"); (vii) Assignment of Sales Contracts (the "Assignment of Sales Contracts"), and (viii)



PLAINTIFF'S
EXHIBIT
4

UCC Financing Statements. The Construction Loan was further secured by additional Continuing Guaranties of the Original Guarantors dated on or about December 22, 2005 (individually a "Second Guaranty" and collectively, the "Second Guaranties"); and

WHEREAS, pursuant to Second Amendment to Loan Documents dated as of June 22, 2007, the Maturity Date of both the $1.5MM Note and the $15.9MM Note were extended until September 22, 2007; and

WHEREAS, the Acquisition Loan and the Construction Loan, as amended, are collectively referred to herein as the "Loan", the Acquisition Loan Documents (as amended, but excluding the $4.5MM Note, which has been replaced) and the Construction Loan Documents are collectively referred to herein as the "Loan Documents"), the Acquisition Loan Agreement and the Construction Loan Agreement are sometimes collectively referred to herein as the "Loan Agreement", and the First Guaranties and the Second Guaranties are collectively referred to herein as the "Guaranties"; and

WHEREAS, CCLLC has obtained title to the Mortgaged Property, subject to the Mortgage and the Loan; and

WHEREAS, in connection with a request from Borrower and CCLLC for a modification to the Loan and the Loan Documents, Borrower and CCLLC have requested Lender to consent to such conveyance subject to the Loan; and

WHEREAS, as a condition to its consent and to the requested Loan modifications, Lender requires that CCLLC assume and agree to perform all of Borrower's obligations and agreements under the Loan Documents.

NOW, THEREFORE, in consideration of the premises and of the mutual agreements herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1. Assumption. CCLLC hereby assumes and agrees to be bound by and to perform all of the terms, covenants, conditions and agreements of Borrower under the Loan Documents, and acknowledges and agrees that it shall be subject to all remedies reserved to the Lender in the Loan Documents in the event of any Event of Default thereunder. CCLLC hereby acknowledges and agrees that the Mortgaged Property shall remain in all respects subject to the Mortgage, and nothing herein contained, and nothing done pursuant hereto, shall affect or be construed to affect the encumbrance of, or warranty of title in, or conveyance effected by, the Mortgage, or the priority thereof over other liens, charges, encumbrances or conveyances; nor shall anything herein contained or done in pursuance hereof affect or be construed to affect any other instrument held by Lender as security of the Loan.

Loan Assumption and
Modification Agreement

Page 2

2.   **Lender's Consent.** Lender hereby consents to the conveyance of the Mortgaged Property to CCLLC subject to the Loan Documents, and to the assumption of the Loan Documents by CCLLC. This consent shall not be deemed to alter or modify any of the terms and conditions of the Loan Documents, or the rights and obligations of the parties thereunder, except as expressly provided herein. Lender acknowledges and agrees that all references to the Borrower under the Loan Documents shall be deemed to refer to CCLLC with respect to covenants and agreements to be performed or observed from and after the date hereof.

3.   **Representations and Warranties of Borrower.** In connection with and as an inducement to Lender's consent to the conveyance of the Mortgaged Property to CCLLC and assumption of the Loan by CCLLC, Borrower hereby represents and certifies to Lender as follows:

   (a)   **Condemnation.** To the best knowledge of Borrower, there are no pending or threatened actions or proceedings with respect to the condemnation of all or any portion of the Mortgaged Property.

   (b)   **Violation of Law.** Borrower has not received any notice of inquiry from any governmental authority claiming any alleged violation of any law, rule, regulation or order of any government authority having jurisdiction over the Mortgaged Property, which violations in any way relate to or affect the Mortgaged Property.

   (c)   **No Events of Default.** As of the date hereof, no "Event of Default" (as defined in the Loan Agreement) exists under the Loan Documents and Borrower has no setoff, counterclaim or defense to the Note or the other Loan Documents.

4.   **Representations and Warranties of CCLLC.** In connection with and as an inducement to the Lender's consent to the acquisition of the Mortgaged Property and assumption of the Loan by CCLLC, CCLLC hereby represents and certifies to Lender as follows:

   (a)   CCLLC hereby acknowledges and represents to Lender that CCLLC has received and reviewed with its legal counsel a copy of all of the Loan Documents.

   (b)   That CCLLC is a limited liability company duly organized, in good standing, and validly existing under the laws of the State of Alabama, and has all requisite power and authority to enter into and perform this Agreement and the Loan Documents; that CCLLC is authorized to conduct business and own and operate the Mortgaged Property under all applicable laws; that the execution, delivery and performance of this Agreement and the assumption of the Loan Documents have been duly authorized by all requisite limited liability company action of CCLLC and will not violate any provisions of applicable law, the articles of organization and operating agreement of CCLLC, or any agreement, indenture or instrument to which CCLLC is a party or by which CCLLC or any of the properties or assets of CCLLC are bound; and that this Agreement and the Loan Documents are the legal, valid and binding

Loan Assumption and
Modification Agreement

obligations of CCLLC, enforceable against CCLLC in accordance with their respective terms, except as enforceability may be limited or affected by (i) bankruptcy, insolvency, reorganization, moratorium or similar debtor relief laws from time to time in effect, (ii) customary principles, judicial decisions, and laws governing, limiting, or affecting the availability of equitable relief generally, and (iii) certain other laws and judicial decisions which may affect certain of the remedial or other provisions contained in the Loan Documents.

(c)     As of the date hereof, no "Event of Default" (as defined in the Loan Agreement) exists under the Loan Documents and CCLLC has no setoff, counterclaim or defense to the Note or the other Loan Documents.

5.     **Amendments to Loan Documents.** In connection with the purchase and sale of the Mortgaged Property and the assumption of the Loan by CCLLC, the Loan Documents are hereby amended as follows:

(a)     All references to "Borrower" are hereby amended to refer to "Character Counts, LLC, an Alabama limited liability company", and any permitted successors in interest to such party hereunder and under the Loan Documents.

(b)     All notice provisions in the Loan Documents are hereby modified to add the following address for CCLLC:

Character Counts, LLC
1230 East I-65 Service Road North
Mobile, Alabama 36617
Attention: Frank P. Ellis, IV

All notices from Lender to the "Borrower" under the Loan Documents shall be sent to CCLLC at the address set forth above.

Additionally, Wolf Pup, LLC shall receive a copy of all notices sent by Lender to Borrower at the address for Wolf Pup, LLC in the original Loan Documents.

(c)     It is the intent of this instrument, and Borrower, Lender and CCLLC agree, that Borrower shall remain liable under the Note and the other Loan Documents, and upon the occurrence of an Event of Default by CCLLC under the Note or the other Loan Documents, and in addition to Lender's right to enforce the Loan Documents and pursue its remedies against CCLLC, Lender may enforce the terms of the Note against and collect the indebtedness evidenced by the Note from Borrower, all to the same extent as if this instrument had never been executed.

(d)     Frank P. Ellis, IV (herein, the "New Guarantor") shall be added as a Guarantor of the Loan (including without limitation the $1.5MM Note and the $15.9MM Note)

Loan Assumption and
Modification Agreement                                             Page 4

pursuant to a new Continuing Guaranty executed contemporaneously herewith. For purposes hereof and the Loan Documents, as amended, the Original Guarantors and the New Guarantor shall individually be referred to as a "**Guarantor**" and collectively as the "**Guarantors**"). All references herein and in the Loan Documents, as amended, to a "Guarantor" or the "Guarantors" shall hereafter be deemed to mean individually, collectively, jointly and severally, each of the Original Guarantors and the New Guarantor.

(e)     It shall be a condition of the Loan that, except as set forth in Section 5(f) below, CCLLC at all times (i) shall be owned or controlled by Frank P. Ellis, IV and Joseph Raley Scott, (ii) shall be a single asset entity, (iii) shall incur no other debt other than the Loan and the subordinated debt to Borrower as set forth herein, and (iv) shall fully comply with all provisions of the Loan Documents, including without limitation the provisions of Section 4 of the Acquisition Loan Agreement and Section 6 of the Construction Loan Agreement.

(f)     It shall be a condition of the Loan that (i) all of the original owners of the Borrower, Linda J. Peacock, Joseph Scott Raley, Kelly D. Schuck, and Robert L. Wiggins, Jr., shall at all times collectively own at least a one percent (1%) membership interest in CCLLC, and (ii) the organizational and operating documents and agreements of CCLLC shall at all time provide that CCLLC may not file a voluntary petition for bankruptcy without the 100% consent of all of its members.

(g)     In connection with the sale of the Mortgaged Property from Borrower to CCLLC, Lender hereby consents to the delivery of a promissory note from CCLLC to Borrower to finance such sale (the "**Purchase Note**"); *provided,* that it shall be a condition of the Loan, and the Purchase Note shall provide, that (i) the Purchase Note is and shall be expressly subordinate in both payment and collection to the Loan, the $1.5MM Note and the $15.9MM Note, and (ii) the Purchase Note is not and shall not be secured by any interest, mortgage, lien or other encumbrance in the Mortgaged Property; and, *provided, further,* that Lender hereby consents to a pledge and a grant of a security interest in the membership interests in CCLLC to Borrower to secure the Purchase Note.

(h)     All earnest money deposits in connection with contracts for the purchase and sale of condominium units in the Project shall be deposited and maintained in accordance with the contract and applicable law in an escrow account established by Borrower or the escrow agent at Superior Bank.

(i)     During the remaining term of the Loan, Borrower shall provide Lender and Wolf Pup, LLC with a monthly marketing report on the Project, in a format approved by Lender, which shall include, at a minimum, the unit numbers, the asking price of each unit, the names and address of all purchasers, the contract price and date, the earnest money deposit received, and the expected closing date.

(j)    A new minimum release schedule for condominium units in the Project has been agreed to by Borrower, CCLLC and Lender contemporaneously herewith (the "New Release Schedule"), which New Release Schedule shall supercede and replace any previous minium release price or schedule contained in the Loan Documents. Lender agrees to release individual condominium units from the Mortgage upon the sale of each such unit and the receipt of the minium release price for such unit shown on the New Release Schedule. *AP WolfPup,LLC*

(k)    Contemporaneously herewith, ~~CCLLC~~ shall establish an interest reserve account at Superior Bank (the "Interest Reserve Account") in an amount not less than $560,000.00. The balance of the Interest Reserve Account shall be maintained by CCLLC in an amount not less than $560,000.00 at all times during the remaining term of the Loan. Lender shall have the right to debit the Interest Reserve Account to make monthly interest payments and payment of Loan expenses under the Loan, but it is not intended that the Interest Reserve Account shall normally be used by Borrower for such monthly interest or expense payments. In the event that Lender shall debit the interest Reserve Account for payment of Loan interest and expenses, CCLLC shall, within ten (10) days of any such debit, deposit additional sums into the Interest Reserve Account so as to restore its balance to an amount not less than $560,000.00. Lender shall have a right of setoff against the Interest Reserve Account to secure the Loan.

(l)    The Certificate of Deposit in the principal amount of $1,500,000.00 (the "Certificate of Deposit") currently pledged and assigned to Lender to secure the Loan shall continue to secure the Loan following this Assumption by CCLLC. Neither Wolf Pup nor CCLLC shall have no right to withdraw proceeds of the Certificate of Deposit until such time as the Loan has been paid in full and the Certificate of Deposit has been released by Lender. If the term of the Certificate of Deposit is for a period less than the Maturity Date of the Loan, as the same may be extended from time to time, then, and subject to the next sentence, the Certificate of Deposit shall be automatically renewed in accordance with its terms. Upon the occurrence of an Event of Default under the Loan which has not been cured within thirty (30) days after notice to CCLLC and Wolf Pup, LLC, Lender shall have the right to draw upon the Certificate of Deposit and apply the proceeds thereof towards payment of the principal, interest and other charges under the Loan. In such event, Lender shall have no liability to CCLLC or Wolf Pup or any other person or entity for any early withdrawal penalties under the terms of the Certificate of Deposit (regardless of whether the Certificate of Deposit is issued by Lender or another bank). *AP WolfPup*

(m)    Contemporaneously herewith, ~~CCLLC~~ shall pay Lender an assumption fee in the amount of ~~$87,500.00~~ *43,750.00, 43,750 additionally if renewed,*

(n)   The Maturity Date in Section 2 of the $1.5MM Note is amended to delete the current date and to insert "March 22, 2008" in lieu thereof. It is the intent hereof to extend the Maturity Date of the $1.5MM Note to March 22, 2008.

(o)   The Maturity Date in Section 2 of the $15.9MM Note is amended to delete the current date and to insert "March 22, 2008" in lieu thereof. It is the intent hereof to extend the Maturity Date of the $15.9MM Note to March 22, 2008.

(p)   Provided there has then been no Event of Default under the Loan or the Loan Documents, CCLLC shall have the option, by written notice given to Lender at least twenty (20) days (but not more than forty-five (45) days) prior to March 22, 2008, to further extend the Maturity Date of each of the $1.5MM Note and the $15.9MM Note to September 22, 2008.

(q)   The Mortgage, the Loan Agreement, the Security Agreement, the Assignment of Contracts, the Assignment of Sales Contracts, the Guaranties and the other Loan Documents shall continue to secure the Loan, the $1.5MM Note and the $15.9MM Note.

(r)   All references in the Mortgage and the other Loan Documents to the $1.5MM Note and the $15.9MM Note (however written) shall mean such notes as amended hereby.

(s)   Except as modified herein, all other terms and conditions of the Loan, the $1.5MM Note, the $15.9MM Note and the other Loan Documents shall remain in full force and effect.

(t)   Borrower and CCLLC hereby ratify and confirm all of the Loan Documents, as amended.

6.   **Additional Agreements Regarding Loan.** In connection with the conveyance of the Mortgaged Property to CCLLC and the assumption of the Loan by CCLLC, CCLLC and Lender hereby agrees as follows:

(a)   CCLLC agrees to pay all costs and expenses of Lender in connection with the execution and delivery of this Agreement and the conveyance of the Mortgaged Property to CCLLC, including but not limited to the reasonable fees and expenses of Lender's attorneys and all recording fees, title examination fees, title insurance premiums, and similar charges.

(b)   CCLLC agrees that this Agreement shall be recorded at CCLLC's expense in the Office of the Judge of Probate of Baldwin County, Alabama. Additionally, CCLLC agrees, at its expense, to provide *either* (1) an endorsement to Lender's Loan Title Policy from First American Title Insurance Company No. FA-31-974028 which (i) increases the insurance amount to $17,488,204.00, (ii) reflects this Agreement and

Loan Assumption and
Modification Agreement

Page 7

the transfer of the Mortgaged Property to CCLLC, and (iii) shows no additional encumbrances on the Mortgaged Property, or (2) a new Loan Policy from Investors Title Insurance Company in the amount of $17,488,204.00 in all respects satisfactory to Lender.

7.   Release of Lender.  By their execution below, Borrower, CCLLC and the Guarantors each hereby acknowledge and agree that neither Lender nor any of its agents, servants, representatives, employees, attorneys, successors, successors-in-interest, predecessors-in-interest and assigns (hereinafter referred to collectively as the "Released Parties") have interfered with or impaired the acquisition, development, construction, operation, ownership, management or leasing of the Mortgaged Property or the Project, and that neither the Borrower, nor CCLLC, not any of the Guarantors have no claim of any nature whatsoever, at law, in equity or otherwise, against the Released Parties, or any of them, as a result of any acts or omissions of the Released Parties, or any of them, under the Loan Documents or in connection to the Loan or the Project prior to and including the date hereof.  Each of the Borrower, CCLLC and the Guarantors hereby unconditionally waives and releases the Released Parties from and against any and all manner of action, suits, claims, counterclaims, offsets, deductions, breach or breaches, default or defaults, debts, dues, sums of money, accounts, deposits, damages, expenses, losses, liabilities and any and all demands whatsoever that the Borrower, CCLLC, the Guarantors, or any of the Borrower's, CCLLC's or any of the Guarantors' successors, successors-in-interest, heirs or assigns can or may have against the Released Parties, or any of them, by reason of any matter, cause, transaction or occurrence whatsoever, which happened or has happened on or before the date of this Agreement, and which is connected in any manner whatsoever with the Loan, the Mortgaged Property, the Project any and all collateral which has served or is serving as security for the Loan or the Loan Documents.  Any and all such claims are hereby declared to be satisfied and settled, and Borrower, CCLLC and the Guarantors hereby discharge the Released Parties from any liability with respect to any and all such claims.

8.   Ratification.  Borrower, CCLLC and Lender mutually covenant and agree that, except as expressly modified herein, the Loan Agreement, $1.5MM Note and the $15.9MM Note and the other Loan Documents, as previously amended and as amended herein, shall remain in full force and effect, and all of the remaining terms and provisions of the Loan Documents are hereby ratified and confirmed.  Borrower, CCLLC and Lender agree that (i) the outstanding and unpaid principal balance of the $1.5MM Note as of October 1, 2007 is $1,500,000.00, (ii) the outstanding and unpaid principal balance of the $15.9MM Note as of October 1, 2007 is $15,984,704.30, and (iii) interest has been paid on the Loan through. August 10, 2007.  Interest on the Loan is being paid through September 10, 2007 as of the date hereof.  The next payment due under the $1.5MM Note and the $15.9MM Note from CCLLC will be due October 10, 2007.

9.   Consent of Original Guarantors.  Each of Linda J. Peacock, Joseph Scott Raley, Kelly D. Schuck and Robert L. Wiggins, Jr. hereby joins in the execution of this Agreement in his or her respective capacity as Guarantor pursuant to his or her First Guaranty dated September

Loan Assumption and
Modification Agreement

Page 8

30, 2005 and Second Guaranty dated on or about December 22, 2005 as described above (as to each Guarantor, collective, the "Guaranty") in order to consent to the terms and provisions hereof and to acknowledge and agree that his or her Guaranty shall continue in full force and effect and shall continue to secure the Loan as modified and assumed hereby, and each Guarantor hereby ratifies and confirms his or her Guaranty and represents and warrants to the Lender that such Guarantor has no defenses to his or her Guaranty as of the date hereof.

10.   **Representations of Original Guarantors and New Guarantor.** In connection with and as an inducement to the Lender's consent to the acquisition of the Mortgaged Property and assumption of the Loan by CCLLC, each of the Guarantors hereby represents and certifies to Lender that such Guarantor has received and reviewed with his or her legal counsel a copy of all of the Loan Documents.

11.   **Miscellaneous.**

   (a)   **Successors and Assigns.** This Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns.

   (b)   **Governing Law.** This Agreement has been negotiated, and is being executed and delivered in Birmingham, in the State of Alabama, or if executed elsewhere, shall become effective upon the Lender's receipt and acceptance of the executed original of this Agreement in the State of Alabama; provided, however, that the Lender shall have no obligation to give, nor shall Borrower be entitled to receive, any notice of such acceptance for this Agreement to become a binding obligation of Borrower, CCLLC and the Guarantors. Borrower, CCLLC and the Guarantors hereby submit to jurisdiction in the State of Alabama for any cause of action or action arising out of or in connection with this Agreement. Borrower, CCLLC and the Guarantors acknowledge that the negotiation, execution and delivery of this Agreement constitutes the transaction of business within the State of Alabama and that any cause of action arising under this Agreement will be a cause of action arising from such transaction of business. Borrower, CCLLC and the Guarantors understand and agree that this Agreement has and will have a significant effect on a bank located in Alabama. This Agreement shall be governed by and construed in accordance with the laws of the State of Alabama.

   (c)   **Headings.** This paragraph and subparagraph headings contained in this Agreement are for reference purposes only and shall not affect its meaning or interpretation in any way.

Loan Assumption and
Modification Agreement

Page 9

(d)    Counterparts. This document may be executed in a number of identical counterparts, each of which for all purposes is deemed an original, and all of which constitute collectively one (1) document and agreement, but in making proof of this document, it shall not be necessary to produce or account for more than one such counterpart, and counterpart pages may be combined into one single document.

*[ remainder of this page is blank – signature pages follow ]*

**Loan Assumption and
Modification Agreement**

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto under seal effective as of the day and year first above written.

WITNESS:

SUPERIOR BANK,
a federal savings bank

By: _William C. McKinnon_

Its: _Senior Vice President_

STATE OF ALABAMA

COUNTY OF JEFFERSON

I, _Kathy K. Oliver_ , a notary public in and for said county in said state, hereby certify that _William C. McKinnon_, whose name as _Sr Vice Pres_ of SUPERIOR BANK, a federal savings bank, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of such instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said federal savings bank.

Given under my hand and official seal this 21 day of ~~October~~ _November_, 2007.

_Kathy K. Oliver_
Notary Public

[ Notarial Seal ]

My Commission Expires: 07-23-2011

**Loan Assumption and
Modification Agreement**

**Page 11**

BORROWER:

WITNESS:

WOLF PUP, LLC,
an Alabama limited liability company

By: _Richard Higgins_

Its: _Authorized Representative_

_____

STATE OF ALABAMA

COUNTY OF _Jefferson_

I, _Dean Jernigan_, a notary public in and for said county in said state, hereby certify that _Robert A. Higgins_, whose name as _Authorized Rep_ of WOLF PUP, LLC, an Alabama limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of such instrument, (s)he, as such _____ and with full authority, executed the same voluntarily for and as the act of said limited liability company.

Given under my hand and official seal this _5-th_ day of October, 2007.

_Dean Jernigan_
Notary Public

[ Notarial Seal ]

My Commission Expires: _11-14-08_

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Nov 14 2008
BONDED THRU NOTARY PUBLIC UNDERWRITERS

Loan Assumption and
Modification Agreement

WITNESS:

CCLLC:

CHARACTER COUNTS, LLC,
an Alabama limited liability company

_____

By: _____
Frank P. Ellis, IV,
its Manager

STATE OF ALABAMA

COUNTY OF _Baldwin_

I, _Barbara C Merryman_, a notary public in and for said county in said state, hereby certify that **Frank P. Ellis, IV**, whose name as Manager of **CHARACTER COUNTS, LLC**, an Alabama limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of such instrument, he, as such Manager and with full authority, executed the same voluntarily for and as the act of said limited liability company.

Given under my hand and official seal this _20_ day of October, 2007.

_____
Notary Public

My Commission Expires 3/15/2009

[ Notarial Seal ]

My Commission Expires: _____

**Loan Assumption and
Modification Agreement**

Page 13

## CONSENT AND JOINDER OF GUARANTOR

The undersigned, as a Guarantor on the Loan, hereby consents to the above modification of the Loan, joins in the above agreement as a signatory thereto, and agrees to the terms thereof, including, without limitation the provisions of Section 7, Section 9 and Section 10 thereof, and agrees that her Guaranties shall continue to secure the Loan as modified, and the undersigned Guarantor further represents to the Lender that, as of the date set forth beside her signature, such Guarantor has no defenses to her Guaranties.

Date Executed: October _16th_, 2007

_____
Linda J. Peacock

STATE OF _Alabama_

COUNTY OF _Jefferson_

I, _Leslie McMellon_, a notary public in and for said county in said state, hereby certify that **Linda J. Peacock**, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day, that, being informed of the contents of such instrument, she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this _16th_ day of October, 2007.

_____
Notary Public

[ Notarial Seal ]

My Commission Expires: _5/29/10_

**Loan Assumption and**
**Modification Agreement**                                    **Page 14**

## CONSENT AND JOINDER OF GUARANTOR

The undersigned, as a Guarantor on the Loan, hereby consents to the above modification of the Loan, joins in the above agreement as a signatory thereto, and agrees to the terms thereof, including, without limitation the provisions of Section 7, Section 9 and Section 10 thereof, and agrees that his Guaranties shall continue to secure the Loan as modified, and the undersigned Guarantor further represents to the Lender that, as of the date set forth beside his signature, such Guarantor has no defenses to his Guaranties.

Date Executed: October __17__, 2007

_____
Joseph Scott Raley

STATE OF _Alabama_

COUNTY OF _Baldwin_

I, _Barbara C Merryman_, a notary public in and for said county in said state, hereby certify that **Joseph Scott Raley**, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day, that, being informed of the contents of such instrument, be executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this __17__ day of October, 2007.

_____
Notary Public

[ Notarial Seal ]

My Commission Expires: _8-15-09_

**Loan Assumption and
Modification Agreement**

## CONSENT AND JOINDER OF GUARANTOR

The undersigned, as a Guarantor on the Loan, hereby consents to the above modification of the Loan, joins in the above agreement as a signatory thereto, and agrees to the terms thereof, including, without limitation the provisions of Section 7, Section 9 and Section 10 thereof, and agrees that her Guaranties shall continue to secure the Loan as modified, and the undersigned Guarantor further represents to the Lender that, as of the date set forth beside her signature, such Guarantor has no defenses to her Guaranties.

Date Executed: October __16__, 2007                    _Kelly D Schuck_____
                                                        Kelly D. Schuck

STATE OF _Alabama_____

COUNTY OF _Jefferson____

I, _Linda J. Peacock_____, a notary public in and for said county in said state, hereby certify that Kelly D. Schuck, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day, that, being informed of the contents of such instrument, she executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this _16th_ day of

                                                        _Linda J Peacock_____
                                                        Notary Public

[ Notarial Seal ]                                       My Commission Expires: _10/1/2011_

**Loan Assumption and
Modification Agreement**

## CONSENT AND JOINDER OF GUARANTOR

The undersigned, as a Guarantor on the Loan, hereby consents to the above modification of the Loan, joins in the above agreement as a signatory thereto, and agrees to the terms thereof, including, without limitation the provisions of Section 7, Section 9 and Section 10 thereof, and agrees that his Guaranties shall continue to secure the Loan as modified, and the undersigned Guarantor further represents to the Lender that, as of the date set forth beside his signature, such Guarantor has no defenses to his Guaranties.

Date Executed: October 5ᵗʰ, 2007

_____
Robert L. Wiggins, Jr.

STATE OF _Alabama_

COUNTY OF _Jefferson_

I, _____, a notary public in and for said county in said state, hereby certify that Robert L. Wiggins, Jr., whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day, that, being informed of the contents of such instrument, he executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this _____ day of October, 2007.

_____
Notary Public

{ Notarial Seal }

My Commission Expires: _1-14-08_

NOTARY PUBLIC STATE OF ALABAMA AT I
MY COMMISSION EXPIRES: Nov 14,
BONDED THRU NOTARY PUBLIC UNDERWB

Loan Assumption and
Modification Agreement

Page 17

## CONSENT AND JOINDER OF GUARANTOR

      The undersigned, as a new Guarantor on the Loan, hereby consents to the above modification of the Loan, joins in the above agreement as a signatory thereto, and agrees to the terms thereof, including, without limitation the provisions of Section 7 and Section 10 thereof, and agrees that his Guaranty shall secure the Loan as modified, and the undersigned Guarantor further represents to the Lender that, as of the date set forth beside his signature, such Guarantor has no defenses to his Guaranty.

Date Executed: October 20th, 2007

_____
Frank P. Ellis, IV

STATE OF _Alabama_

COUNTY OF _Baldwin_

      I, _Barbara C Merryman_, a notary public in and for said county in said state, hereby certify that Frank P. Ellis, IV, whose name is signed to the foregoing instrument and who is known to me, acknowledged before me on this day, that, being informed of the contents of such instrument, he executed the same voluntarily on the day the same bears date.

      Given under my hand and official seal this _20_ day of October, 2007.

_____
Notary Public

My Commission Expires 8/15/2008

[ Notarial Seal ]

My Commission Expires: _____

**ADDITIONAL DOCUMENTS NEEDED:**

1.  New Continuing Guaranty from Frank P. Ellis, IV

2.  New UCC-1 Financing Statements (for filing with Baldwin County and Alabama Secretary of State) from CCLLC to Superior Bank (and also UCC-3s) – use mete and bounds, plus condo description (if Condo Declaration has been recorded)

3.  New Release Schedule Agreement between CCLLC and Lender

4.  Copy of Organizational Documents for CCLLC

5.  Certificate if Existence from Secretary of State of Alabama re CCLLC

6.  Good Standing Certificate from Alabama Department of Revenue re CCLLC

7.  Consent of Members of CCLLC re assumption of Loan

8.  Opinion of Counsel of CCLLC re limited liability company organization, existence and standing in the State of Alabama, and due authorization, execution, delivery and enforceability of Loan Assumption (*see* format of opinions for original loan documentation)

9.  Copy of Note and membership pledge documents from members of CCLLC to Borrower

10. Evidence of deposit of $560,000 into new Interest Reserve Account

11. Evidence of establishment of escrow account (re condo units earnest money deposits) at Superior Bank and deposit if earnest money deposits

12. Endorsement to Title Policy showing no additional encumbrances, reflecting Assumption Agreement and increasing amount of insurance to $17,488,204.00 – Section 6(b).

Loan Assumption and
Modification Agreement                                                        Page 19