FILED

2017 Apr-28  PM 12:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit C

ELECTRONICALLY FILED
8/19/2010 5:12 PM
CV-2007-900084.00
CIRCUIT COURT OF
BALDWIN COUNTY, ALABAMA
JODY WISE CAMPBELL, CLERK

# IN THE CIRCUIT COURT OF BALDWIN COUNTY, ALABAMA

WOLF PUP, L.L.C.,                     *
                                       *
      Plaintiff,                     *
                                       *
vs.                                    *          CASE NO.  CV-2007-900084
                                       *
LINTON D. BOWLES, et al.,             *
                                       *
      Defendants.                    *

## PLAINTIFF'S OPPOSITION TO MOTION FOR DISQUALIFICATION

The motion for disqualification is based on a false representation by Linda Peacock, under oath, that Wolf Pup LLC was represented by Bob Wiggins in the events relevant to this lawsuit, rather than her or her law firm, Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. ("Baker Donelson" hereafter). *See Peacock Declaration* filed herein. The attached exhibits show that Ms. Peacock and Baker Donelson were the **sole attorneys** for Wolf Pup LLC at all times relevant to this lawsuit. *See* Exhibits 1-24.

First, it is a matter of record in this case that Peacock's law firm was the **sole** counsel who filed the *Verified Complaint* in this case as the "attorneys for Wolf Pup LLC" on February 16, 2007. *See* Exh. 1.  Baker Donelson continued to represent Wolf Pup LLC in this case for the next two years, withdrawing only after Wolf Pup and Wiggins had brought suit against Peacock and Baker Donelson for malpractice on April 16, 2009. *See* Exhs. 20-21. Second, it is a matter of record in this case that Peacock and Baker Donelson have executed formal *Admissions* attesting that Linda Peacock was the attorney for Wolf Pup LLC who drafted and filed the Declaration of Condominium of Wolf Bay Landing Condominiums

that is at issue in this case and in the pending summary judgment motions. *See Admissions*

1-11, 29-30 filed September 28, 2009. (attached hereto as Exhibit 2). Their Admissions that

Peacock and Baker Donelson were Wolf Pup's attorneys in the events relevant to this case

were as follows:

> 1.    Linda Peacock has been a lawyer and shareholder of the law firm of Baker Donelson Bearman Caldwell & Berkowitz P.C. since at least January 1, 2005.

> RESPONSE: Admitted.

> 2.    Linda Peacock drafted and prepared the Declaration of Condominium of Wolf Bay Landing Condominiums that is attached hereto as Exhibit 1 (hereinafter referred to as "Declaration of Condominium").

> RESPONSE: It is admitted that Linda Peacock drafted and prepared that portion of the Declaration of Condominium attached as Exhibit "1".

> 3.    Linda Peacock drafted the attached Declaration of Condominium of Wolf Bay Landing Condominiums at her office located at 1600 SouthTrust Tower, 420 North 20th Street, Birmingham, Alabama, as noted on page one of such Declaration.

> RESPONSE: This is admitted in part and denied in part. Some of the attached Declaration of Condominium was prepared while Linda Peacock was physically in Baldwin County.

> 4.    The Declaration of Condominium of Wolf Bay Landing Condominiums drafted by Linda Peacock was filed with Judge of Probate for such Condominiums on April 17, 2007 as Instrument Number 1043933 as reflected on Exhibit 1 attached hereto.

RESPONSE: It is admitted the portion of the Declaration of Condominium attached as Exhibit "1" was filed with the Judge of Probate in Baldwin County.

* * *

29.     Linda Peacock drafted the Declaration of Condominium for Wolf Bay Landing Condominiums in her capacity as an attorney and shareholder of Baker Donelson Bearman Caldwell & Berkowitz P.C.

RESPONSE: It is admitted that the portion of Declaration of Condominium drafted by Linda Peacock was drafted as an attorney and shareholder of Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.

30.     Linda Peacock drafted the Declaration of Condominium for Wolf Bay Landing Condominiums in her capacity as an attorney for Wolf Pup LLC.

RESPONSE: It is admitted that the portion of the Declaration of Condominium drafted by Linda Peacock was drafted in her capacity as an attorney for Wolf Pup, LLC.

*Admissions* 1-4, 29-30. Bob Wiggins had nothing to do with these events.

Third, the Declaration of Condominium drafted by Linda Peacock as Wolf Pup's attorney states on page one: "This instrument was prepared by: Linda J. Peacock, Baker Donelson Bearman Caldwell & Berkowitz P.C., 1600 SouthTrust Tower, 420 20th Street North, Birmingham, Alabama 35203." Exhibit 3.   Peacock and Baker Donelson admitted this fact in Admission #31.  *See* Exh. 2 at #31.

Fourth, Baker Donelson's attorneys were the **sole** counsel for Wolf Pup LLC at the time two of its attorneys stood before this Court on April 28, 2007 to argue the validity of the Letters of Credit that are at issue here.  Exhs. 9-11.  This Court denied enforcement of such

Letters in the Order issued May 11, 2007.  Exh. 11.

Fifth, Baker Donelson's attorneys were the **sole** counsel for Wolf Pup LLC at the time they appealed the foregoing Order of May 11, 2007 to the Alabama Supreme Court and throughout the briefing in August 2007 and the disposition of that appeal on November 30, 2007. *See* Exhs. 12-15.

Sixth, Baker Donelson's business records show that it was the **sole counsel** to Wolf Pup LLC throughout the period prior to the *Tolling Agreement and Waiver* that Peacock signed on July 27, 2007. *See* Exhs. 4 & 8.  By that date, all the events relevant to this case had already occurred, as shown by the motion Baker Donelson filed in March 2007 seeking to try this case on the merits not later than May 11, 2007. *See* Exhs. 9, 11-15.  Exhibit 8 is an internal Baker Donelson *Memorandum* which determined that *all* of Linda Peacock's communications relating to Wolf Bay Landing Condominiums were solely in her capacity as the attorney for Wolf Pup LLC, not as a member or constituent of the LLC.  The "Facts" in Baker Donelson's *Memorandum* states that Peacock "has provided substantially all of the legal services to the LLC", that "there was no outside counsel", and that Peacock "does not appear to be actively involved in the Client's business, except to the extent necessary to provide legal advice." Exh.8. The e-mail commissioning this research *Memorandum* also stated the following:

> Linda Peacock is a business partner in and has acted as counsel
> to a limited liability company.  Litigation related to the llc's
> business is now ongoing.  What are the parameters of the

> attorney-client privilege with respect to her communications with other members of the llc and on behalf of the llc? Could we successfully take the position that every communication with the members of the llc that she made is privileged because such communication was made by her acting in her role as counsel even if, at the time, she was also an interested business partner.

Exh. 8 (Baker Donelson Bate's no. 5680). Based on the foregoing *Memorandum*, Peacock has claimed attorney-client privilege in this case as to *every* document and communication she has ever had with Kelly Schuck, who was a member of a member of Wolf Pup LLC with whom she lives.

Seventh, Bob Wiggins put Peacock on notice that he and Wolf Pup LLC were asserting malpractice claims against her more than three years ago on July 27, 2007. *See* Exh. 4.    Peacock signed a formal *Tolling Agreement and Waiver* that day which acknowledged that Wiggins' and Wolf Pup LLC's assertion of claims against her for the negligence that led to the defenses and counterclaims at issue in this case. *See* Exh. 4. That signed agreement of July 27, 2007 made clear that neither Wolf Pup LLC nor Mr. Wiggins were representing her, but were instead planning to sue her for the injuries she had caused them. *Id.*   It stated:

### TOLLING AGREEMENT AND WAIVER

> This Tolling Agreement and Waiver (hereinafter "Agreement") is made and entered into by and between Wolf Pup. LLC and Robert L. Wiggins and Ann K Wiggins ("Wolf Pup/Wiggins") and Kelly Schuck, Linda J. Peacock, Watershed Investments, LLC, Watershed Investments, LLP and Watershed Investments LP ("Watershed/Peacock/Schuck").

In consideration of the mutual agreements described herein, Wolf Pup/Wiggins and Watershed/Peacock/Schuck agree as follows:

1.      All applicable periods of limitation or other filing or time requirements, whether contractual, statutory, equitable, or otherwise for any and all civil action **which Wolf Pup/Wiggins may have** arising from or in any way related to any Claims (as defined below), or for instituting any arbitration on such Claims, if applicable, shall be tolled and waived from the Effective Date (as defined below) of this Agreement, as set forth below.

2.      As used herein, the term "Claims" includes any and all claims or causes of action arising from or in any way connected with the purchase, assignment or development of the land, contracts, Letters of Credit, permits, and condominium project known as Wolf Bay Landing Condominiums, located in Baldwin County, Alabama, including, but not limited to: . . . (3) obtaining, drafting or preparing documents, legal or, otherwise, related to such condominium project, including, but not limited to, the Offering Statement and accompanying documents, the Declaration of Condominium, . . . the Assignment of the Wolf Bay Landing Condominium project, land, Letters of Credit, purchase agreements, permits, plats, plans drawings and other materials, rights, and interests;

\* \* \*

3.      The Effective Date of this Agreement shall be July 25, 2007 . . . .

\* \* \*

5.      In consideration to enter this Agreement, Wolf Pup/Wiggins **have abstained from filing a lawsuit against Watershed/Peacock/Schuck,** arising from any of the "claims" or subject matter identified above.

6.      Each person signing this Agreement represents and warrants that he has full authority and power to bind the party or parties on behalf of which he signs.

Exh. 4 attached.

Eighth, the foregoing *Tolling Agreement and Waiver* shows that Peacock is not being truthful when she states that her interests were aligned with those of Wolf Pup LLC and that the attorneys for Wolf Pup LLC were representing her whenever they represented Wolf Pup LLC. Peacock's sworn Declaration states that she understood that Wiggins and his firm "were not just the attorneys for Wolf Pup LLC the entity, but also were acting as the attorney for me and the other individuals who had given personal guaranties." *Peacock Declaration* at ¶6. That cannot possibly be true in light of Peacock's and Schuck's signed acknowledgment that Wolf Pup LLC and Wiggins intended to bring claims against her as of July 27, 2007 for injuring Wolf Pup LLC and Mr. and Mrs. Wiggins. *See* Exh. 4.

Ninth, Mr. Wiggins was merely a member of Wolf Pup LLC, not its attorney, until after the *Tolling Agreement and Waiver* was signed by Ms. Peacock on July 27, 2007. *See* Exhs. 1-17. The record in this case shows that it was only after that *Agreement* that Wiggins first began representing Wolf Pup LLC as co-counsel with Baker Donelson.

Tenth, Baker Donelson's was Wolf Pup LLC's attorney from the date Peacock formed the LLC in mid-2005 until after she signed the *Tolling Agreement and Waiver* on July 27, 2007 and on into mid-2009. *See* Exhs. 1-8. Peacock never divulged any confidential client communications to Mr. Wiggins because: (1) she was *the attorney* for Wolf Pup LLC and communicated with Mr. Wiggins solely in that capacity before July 27, 2007; and (2) after that date she had an adversarial relationship to Mr. Wiggins as a result of the malpractice

claims he was asserting against her from at least July 27, 2007 forward. Exhs. 1-8. Baker Donelson continued to represent Wolf Pup LLC until it withdrew nearly two years later, on April 21, 2009. *See* Exh. 21. Ms. Peacock's law firm decided that its own attorneys were the ones who had a conflict of interest that disqualified them from further representation of Wolf Pup LLC in this case, not Wiggins. *See* Exh. 21. Baker Donelson's motion to withdraw as counsel for Wolf Pup LLC on April 21, 2009 specifically stated that Wiggins would continue as Wolf Pup LLC's attorney in this case. Exh. 21.

Eleventh, Ms. Peacock has signed an Affidavit stating that she was Ms. Schuck's personal attorney, as well as the personal attorney of Mr. and Mrs. Wiggins. Exh. 6, ¶11. She states: "I represented Robert Wiggins, Ann Wiggins and Kelly Schuck in forming Galapagos LLC and in conducting certain of the business affairs of such LLC since its formation. As the attorney for Galapagos LLC *and its members*, I have been involved with and knowledgeable of certain of the business and legal affairs of such LLC *and its members*. . . ." *Peacock Affidavit* at ¶1 attached as Exh. 6(emphasis added). Ms. Peacock was the personal attorney for Mr. and Mrs. Wiggins from the time she formed the LLC on June 7, 2006 until the Wiggins brought suit against her in April 2009 for malpractice. *See* Exhs. 6 & 7.

Twelfth, Ms. Peacock was put on further notice that Wolf Pup LLC and its attorneys were not representing her in an e-mail which specifically reiterated that"[j]ust as in the prior cases and proceedings involving Wolf Pup LLC, I can't represent you and Kelly Schuck

individually.  The Bar Rules of Professional Responsibility prevent that." Exh. 5 attached.
Ms. Peacock and Ms. Schuck hired separate counsel for that case — Billy Mills.  *See* Exh.
19.  Bob Wiggins represented only Wolf Pup LLC because of the on-going adversarial
relationship between Wolf Pup LLC and Peacock set forth in the *Tolling Agreement and
Waiver* which is quoted above. Exhs. 4, 5 and 19.

Thirteenth, Ms. Peacock's current Declaration is the exact opposite of what she  has
stated in the Jefferson County Circuit Court and the federal court in Birmingham about the
same events involving Wolf Pup LLC and Galapagos LLC.   *See* Exhs. 23 & 24.  In those
cases, Ms. Peacock  told the Court that she was the attorney for Wolf Pup LLC and
Galapagos LLC, as well as Mr. and Mrs. Wiggins,  in all of the events discussed in her
current motion to disqualify and supporting Declaration. *See* Exhs. 23 and 24.  In the federal
case involving Galapagos/Paradise Resort, Peacock stated:

> 26.      The allegations asserted against Ms. Peacock and
> Baker, Donelson in support of Plaintiffs' securities claim
> necessarily flow from the attorney-client relationship that
> existed between the Plaintiffs, Ms. Peacock and Baker,
> Donelson.  The fact that Peacock and Baker Donelson were
> acting as the Plaintiffs' attorneys "prior to and at the time" of
> this investment is specifically pled in the Amended Complaint.
> (Doc. 95, Amended Complaint, ¶30). **There is no dispute that
> an attorney-client relationship existed between these parties;**
> indeed, the Plaintiffs' have filed a prior pending action against
> the same Defendants in Jefferson County Circuit Court in which
> they allege that Ms. Peacock and Baker, Donelson breached the
> standard of care owed by an attorney to his client in the manner
> in which they handled this very investment.
> * * *

> 27.    Because the claims asserted in the instant matter derive from the delivery of legal services by Ms. Peacock and Baker Donelson, the action, no matter how styled is one for legal malpractice.

*See* Exhibit 24 which is Peacock's *Motion to Dismiss* at ¶¶26-27, filed December 3, 2009 in

*Galapagos, Beowulf and Wiggins v. Vision Bank, Peacock and Baker Donelson*, Case #2:09-

CV-0978-LSC (N.D. Ala. doc. 97) (emphasis added).  Ms. Peacock  said the same thing to

the Jefferson Circuit Court:

> 2.    The allegations asserted against Ms. Peacock and Baker, Donelson in support of Plaintiffs' securities claims necessarily flow from  the attorney-client relationship that existed between the Plaintiffs, Ms. Peacock and Baker, Donelson.  The Plaintiffs' have filed a prior pending action against the same Defendants in Jefferson County Circuit Court, in which they allege that Ms. Peacock and Baker, Donelson breached the standard of care owed by an attorney to a client in the manner in which they  handled this matter. (Complaint, CV-2009-1219, attached hereto as  Exhibit A).  Because the claims asserted in the instant matter **indisputably derive from the delivery of legal  services by Ms. Peacock** and Baker Donelson, the action, no matter how styled, is one for  legal malpractice.

*See* Exhibit 23 which is Peacock's *Motion To Dismiss* at ¶2, filed September 1, 2009 in

*Beowulf LLC, Wolf Pup LLC and Wiggins v. Raley, Peacock and Baker Donelson*, CV-2009-

902410 (emphasis added).

Fourteenth, Ms. Peacock's contention that she was the client and Mr. Wiggins was her

attorney is also the exact opposite of what she represented in motions seeking to have various

Courts hold that Mr. Wiggins waived the attorney-client privilege in his capacity as Baker

Donelson's client and the principal owner of Wolf Pup LLC. If Ms. Peacock had been the client/constituent rather than merely the attorney, then she would have been the owner of the privilege and could have waived it on her own rather than through Mr. Wiggins.

Thus, Peacock's and Baker Donelson's sole relationship with Wolf Pup LLC has been as its attorney, both in drafting and filing the defective condominium documents at issue in this case (Exhs. 2-4) and in filing and prosecuting the case itself for more than two years from February 16, 2007 through April 21, 2009. Exhs. 1, 8-18.  Peacock's knowledge that she was not being represented by Wiggins is demonstrated  by her actions in the three years since she was put on notice that Wiggins and Wolf Pup LLC were bringing malpractice claims against her, as well as in the past year in which those claims have been hotly litigated in several different courts.  Not once in those three years did Peacock ever allege that Wiggins had a conflict of interest  because he was her attorney.  If she had thought that, she would have said so long ago and not signed the affidavit or filed the  motions that state that she was the attorney for Wiggins, not that he was her attorney.  *See* Exhs.2-8.  She also would not have signed the *Tolling Agreement and Waiver* that made her the adversary of Wolf Pup and Wiggins if she thought that Wiggins was her attorney.

## I.   WOLF PUP'S ATTORNEYS HAD AN OBLIGATION TO PROTECT THE LLC FROM PEACOCK AND BAKER DONELSON, NOT TO REPRESENT THEIR ADVERSE INTERESTS SIMULTANEOUSLY

Rather than representing Ms. Peacock or Ms. Schuck as part of the representation of Wolf Pup LLC, Jim Curenton and Bob Wiggins had a duty to protect Wolf Pup LLC from

injuries caused by such third parties. *See Restatement (Third) of The Law Governing Lawyers*, §96 ("[I]f the threatened injury is substantial the lawyer must proceed in what the lawyer reasonably believes to be the best interests of the organization."). The *Restatement* explains that:

> The lawyer thus must not knowingly or negligently assist any constituent to breach a legal duty to the organization. However, a lawyer's duty of care to the organization is not limited to avoidance of assisting acts that threaten injury to a client. A lawyer is also required to act diligently and to exercise care by taking steps to prevent reasonably foreseeable harm to a client. Thus, Subsection (2) requires a lawyer to take action to protect the interests of the client organization with respect to certain breaches of legal duty to the organization by a constituent.

*Restatement (Third) of The Law Governing Lawyers*, §96.[1]

Peacock's damage to Wolf Pup is a matter of record in this case. Two groups of defendants have filed motions for summary judgment alleging that as Wolf Pup's former attorneys, Linda Peacock and her law firm, Baker Donelson, caused the damage to Wolf Pup that is at issue in this case by failing to properly draft the condominium documents in the manner required to create the individual condominium units as legal entities conveyable to

---

[1] Peacock has never been a "constituent" of Wolf Pup LLC because she has never been a member, officer, employee or anything else other than an external attorney to Wolf Pup LLC. The Restatement (Third) on lawyers lists the following cases with respect to the duty of a lawyer to act to protect the organization against wrongful acts by constituents or third parties. *FDIC v. O'Melveny & Meyers*, 969 F.2d 744 (9th Cir.1992) (duty to protect corporate client against acts of constituents creating corporation liability), rev'd on other grounds, 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), on remand, 61 F.3d 17 (9th Cir.1995); *FDIC v. Clark*, 978 F.2d 1541 (10th Cir.1992) (upholding jury verdict against lawyers on theory that lawyers breached duty to make reasonable independent investigation into third-party allegations of fraud on the part of senior bank officers); *In re American Continental Corp.*, 794 F.Supp. 1424, 1453 (D.Ariz.1992) (claim by corporate successor that law firm breached fiduciary duty to corporate client sufficiently pleaded by alleging that lawyers failed to take corrective action in face of belief that constituents were committing serious regulatory violations); *In re Silva*, 636 A.2d 316 (R.I.1994) (lawyer for financial institutions required to disclose wrongdoing of principal causing financial injury to clients). *See* Restatement (Third) of The Law Governing Lawyers, §96.

the defendant-purchasers.

Consequently, Peacock and Baker Donelson have no standing or right to speak on Wolf Pup's behalf, or to decide what is in its best interests in this or any other case. Peacock and Schuck are mistaken in saying that pursuit of the case against Baker Donelson is an inferior avenue of recovery for the losses to Wolf Pup LLC, and is therefore not in the best interests of Peacock and Schuck as guarantors. They only say that because of the conflict of interest created by Peacock' membership in Baker Donelson, and by the conflict created by Ms. Schuck's personal or conjugal relationship with Ms. Peacock. Those twin conflicts have led Peacock and Schuck to put their own private interests ahead of Wolf Pup LLC's interests in an effort to protect Baker Donelson and Peacock from the consequences of their faulty drafting of the condominium documents at issue in this case  Eighty percent (80%) of Wolf Pup LLC's ownership has decided that it is in Wolf Pup LLC's best interest to hold  its former counsel, Baker Donelson and Linda Peacock, accountable for the injury they have caused the LLC.[2]

Wolf Pup has the right to decide for itself whether it is in its best interest to pursue its

---

[2]  Beowulf LLC owns 80% of Wolf Pup LLC and has authorized and directed Wolf Pup LLC to take whatever action is necessary to recover such damages from  its former attorneys — Peacock and Baker Donelson.  The two 10% members of Wolf Pup LLC — Watershed Investments LLP and Builders Risk LLC — have never raised any objection to Wolf Pup LLC suing Peacock or Baker Donelson about such alleged misdrafting since those allegations were first raised in 2007-2008. Those LLC's would have a clear conflict of interest if they had made any such objection because of their relationship to Peacock. Wolf Pup LLC has also determined from its own investigation that it is in its best interests to file suit in its own name against Peacock and Baker Donelson to recover the losses caused by such attorneys before the statute of limitations expired on such claims.  Wolf Pup LLC filed such suit against Peacock, Schuck  and Baker Donelson in Jefferson County where they both reside and where the alleged wrongs occurred.  *See* Exh. E attached.

claims against Peacock, Schuck and Baker Donelson for the injuries they caused to the LLC. Such claims against Baker Donelson are also in the best interests of the guarantors of the loan at Superior Bank, such as Wiggins and Schuck, because Baker Donelson's negligent drafting of the condominium documents may deprive Wolf Pup LLC of any right of recovery against the defendant-purchasers of the condominium units in this case. Peacock and Schuck cannot credibly claim that this is not in Wolf Pup's best interest because whatever can be recovered in this case can also be recovered in the separate case against Baker Donelson for injuring Wolf Pup LLC's right to recover in this case. The two recoveries are mirror images of one another.

Moreover, Peacock and Baker Donelson are mistaken in representing to the Court that "it is the personal interests of the guarantors, including . . . Peacock, that are at risk and at interest in this case" because "the overriding purpose of the litigation is to obtain funds to reduce their indebtedness to Superior Bank." *Motion For Disqualification* at 2. There is no such "indebtedness" of the guarantors because the Borrower — Character Counts LLC — has made timely payments to Superior Bank throughout the life of such loan. Character Counts LLC is completely independent of Wolf Pup LLC and any other persons or entity relevant to this lawsuit. Wolf Pup LLC sold the Wolf Bay Landing project in its entirety to Character Counts LLC in 2007, and that independent company assumed the loan at that time that had originally been made to Wolf Pup LLC. Contrary to Peacock's effort to define Wolf Pup's objective in this case, this suit is about Wolf Pup's *existing losses* that are

independent of any guarantors' speculative or contingent liability on any loan.

## II.   CO-COUNSEL ARE NOT SUBJECT TO IMPUTED CONFLICTS OR CONFIDENCES

Even if it were not so obvious that Mr. Wiggins never represented Linda Peacock in any capacity, attorneys who are merely co-counsel, like Mr. Curenton, are not subject to conflicts or confidences imputed to them from other attorneys in the case. *Ex Parte Terminex Intl. Co.*, 736 So.2d 1094, 1095 (1999). Mr. Curenton is an attorney representing Wolf Pup LLC independently of any other counsel in this case. The Supreme Court has held in *Terminex* that co-counsel in different law firms are not subject to imputed disqualification based on the actions or knowledge of another attorney unless there is actual proof that they shared confidential information. *Ex Parte Terminex*, 736 So.2d at 1094-1095. The movant for disqualification carries the burden of proving actual knowledge of confidences and cannot rely on mere imputed knowledge. *Id.* There is no such proof here.

The attorneys sought to be disqualified have never represented Ms. Peacock in any capacity. Mr. Curenton has never even met or talked with her. He first made an appearance as Wolf Pup LLC's attorney in this case less than six months ago on February 25, 2010. His appearance came nearly three years after Peacock signed the written *Tolling Agreement and Waiver* set forth above in which she acknowledged that Wolf Pup LLC was asserting claims against her regarding the condominium documents at issue in this case. *See* Exh. 4. It was well documented at the time that Mr. Curenton first appeared as counsel for Wolf Pup LLC

that the LLC and Wiggins were adversarial to Peacock and Schuck and not representing them in any capacity. *See* Exhs. 4-6, 20-21. In fact, Curenton first entered this case nearly a year after Wolf Pup LLC had sued Peacock and Schuck for the injuries they caused the LLC. *See* Exh. 4, 5, 6, 7, 20, 21. Moreover, Jim Curenton is not counsel in any case in which Peacock and Baker Donelson are sued as parties or in which Wolf Pup LLC is a party. Peacock's motion for disqualification of counsel is simply wrong in representing that Curenton is "currently prosecuting actions against . . . Peacock." *Motion For Disqualification* at 9-10.

The third attorney sought to be disqualified — Gene Rutledge — has never made an appearance in this case. He cannot be disqualified from a case in which he is not counsel for any party. Mr. Rutledge has also never had an attorney-client relationship with Peacock, Baker Donelson or any entity in which they were a member in this or any other proceeding.[3]

## III. PEACOCK AND SCHUCK HAD NO CONFIDENTIAL INFORMATION THAT WAS SHARED WITH ANY ATTORNEY FOR WOLF PUP LLC

Because Mr. Curenton and Mr. Wiggins never represented Ms. Peacock and Ms. Schuck, there was never any information shared between them which was covered by an attorney-client privilege. As already shown, Curenton and Wiggins have been adversaries of Peacock and Schuck throughout the period of time they have represented Wolf Pup LLC,

---

[3] Wolf Pup LLC is represented by Lee Pittman and Chris Hellums in the two actions against Peacock and Baker Donelson which are pending in Jefferson County. Pittman and Hellums replaced Gene Rutledge as Wolf Pup LLC's attorney on March 9, 2010. Rutledge is not counsel in any case involving Wolf Pup LLC or Wolf Bay Landings condominiums. His motion to withdraw in the malpractice case in Jefferson County Circuit Court stated that it was for reasons unrelated to the disqualification issues raised by Peacock and Baker Donelson. Mr. Curenton is not representing Wolf Pup LLC in any action other than this one.

<u>Wolf Pup v. Linton Bowles, et al</u>
Case No. CV-2007-900084                    16

and therefore anything said by Peacock or Schuck to Wolf Pup's attorneys was a disclosure to a third party (Wolf Pup and Wiggins) that was not covered by any conceivable attorney-client privilege. *See* Exhs. 4 and 5. As explained in the Restatement (Third) on lawyering:

> The lawyer is not prevented by rules of confidentiality from acting to protect the interests of the organization by disclosing within the organization communications gained from constituents who are not themselves clients. That follows even if disclosure is against the interests of the communicating person, of another constituent whose breach of duty is in issue, or of other constituents (see §131, Comment *e*).

Restatement (Third) of The Law Governing Lawyers, §96.

Peacock and Schuck also had no confidential information relevant to Wolf Pup LLC in the first place. Mr. Wiggins obtained no information from Peacock or Schuck that did not already belong to Wolf Pup LLC or that was not already known to Mr. Wiggins in his capacity as the owner of Wolf Pup LLC's majority member, Beowulf LLC. Any information Peacock had was the product of her serving as the attorney for Wolf Pup LLC, and thus belongs to Wolf Pup. *See* Exh. 8. As Peacock's client, Wolf Pup is free to waive any such attorney-client privilege. Any information that Schuck had was the product of her agency relationship with Wolf Pup LLC, and was thus the property of Wolf Pup as the principal in that relationship. Schuck had no access to any information about Wolf Pup LLC except through that agency relationship. Neither Peacock or Schuck had information from any personal status or interests because they had no such interests. They were not members of Wolf Pup LLC in their personal capacity.

## IV.   PEACOCK AND BAKER DONELSON WAIVED THE CONFLICTS AT ISSUE

### A.   Direct Waiver

On May 28, 2009, Peacock and Baker Donelson agreed to waive any conflicts that may exist between that firm, Wiggins and the law firm of Starnes and Atchison.  Exh. 22. The issue arose in the context of Peacock and Baker Donelson attempting to retain attorneys at the firm of Starnes and Atchison to represent them at a time when Starnes and Atchison was already representing Wiggins in another matter.  Those three law firms — Baker Donelson, Wiggins Childs and Starnes Atchison  — had a thorough discussion of all potential conflicts of interest that may arise from the lawsuits that Wiggins and Wolf Pup LLC brought against Peacock and Baker Donelson, and then agreed to mutually waive not just the specific conflicts that could be identified at that time, but any and all other conflicts that may exist.  The following language in the Peacock's and Baker Donelson's signed conflict waiver includes the conflict currently at issue:

> This is also to confirm that the WAIVER OF CONFLICT AND CONSENT TO REPRESENTATIONS **by all of the individuals and entities listed above** include not only the three pending lawsuits referenced above, but also extends to any other dispute, claim or litigation now pending, or which may arise in the future, between Wiggins, or Wiggins Childs on the one hand, and Baker Donelson on the other hand.

Exh. 22(emphasis added).

That all-encompassing language obviously includes the current conflict and any others

that may arise, whether listed or not. Peacock signed that waiver, as did the General Counsel

for Baker Donelson. At no point did Peacock or Baker Donelson suggest that this conflict

waiver did not apply to Wiggins' continued representation of Wolf Pup LLC against Peacock

and Baker Donelson . They had just agreed to Wiggins' representation of Wolf Pup a month

before when they withdrew as counsel in this case on April 21, 2009. *See* Exhibits 21 and.

22. The intent to include all possible conflicts, whether listed or unlisted in the agreement,

is also evidenced by the fact that Peacock and Baker Donelson did not raise the conflict

currently alleged until nearly a year after such conflict waiver was executed. Peacock and

Baker Donelson admit the conflict alleged against Wiggins was known to them throughout

that time period. That delay is a waiver in itself. *Ex Parte Intergraph Corp.*, 670 So.2d 858,

860 (Ala. 1995).[4]

### B.   Waiver By Delay

The Alabama Supreme Court has held that disqualification is waived when not raised

"within a reasonable time after discovering the facts constituting the basis for the motion."

*Ex Parte Intergraph Corp.*, 670 So.2d 858, 860 (Ala. 1995). A delay of six months was held

too much: "Intergraph should have objected to Crowson's involvement at the very beginning,

instead of allowing the case to proceed for six months . . . ." *Id.* (relying upon *Cox v.*

---

[4] Mr. Wiggins would not have waived the conflict for Peacock's and Baker Donelson's attorneys if such attorneys were not, in turn, mutually waiving any conflict "between Wiggins, or Wiggins Childs on the one hand, and Baker Donelson on the other hand." Exh. 22. Those are the parties' chosen words in their conflict waiver, which was mutual and all encompassing on its face. If there was no such mutuality, then the conflict waiver is not valid as between any of the three law firms to whom it applies because there was no true meeting of the minds and the agreement was the product of a mutual mistake.

*American Cast Iron Pipe Co.*, 847 F.2d 725 (11ᵗʰ Cir. 1988), which involved an 18 month delay); *see also Jackson v. J. C. Penney Co., Inc.* 521 F. Supp. 1032, 1034-1035 (N.D. Ga. 1981) ( "A litigant may not delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of the case has been completed. * * * The court is unaware of any decision which holds that ignorance of the law is an adequate excuse for failure to bring a motion to disqualify counsel. By allowing Mr. Schulman to proceed with the representation of the plaintiffs in the state action for over fifteen months, the defendant has essentially waived any right it had to obtain Mr. Schulman's disqualification.").

The delay here is far more than six months. Wolf Pup LLC and Wiggins brought suit against Peacock and Baker Donelson on April 16, 2009 and gave them notice of the intent to file such suit in the *Tolling Agreement and Waiver* that Peacock signed nearly three years ago on July 27, 2007. *See* Exhs. 4 and 20. Extensive discovery has been on-going throughout that period, including various notices to take Peacock's deposition that began being served in May 2009. Peacock and Schuck acknowledged that Wolf Pup LLC's and Wiggins' interests were antagonistic to them when they signed the Tolling Agreement on July 29, 2007 in order to delay suit being filed against them. *See* Exh. 4. From that point forward, Peacock and Baker Donelson had all the information they needed to decide whether to seek disqualification of Wiggins or any other attorney for Wolf Pup LLC on the grounds belatedly raised in the current motion. Instead of doing so, Baker Donelson decided that its

own attorney were the ones who had a conflict of interest that disqualified them from further representation of Wolf Pup LLC in this case, not Wiggins. *See* Exh. 21 Baker Donelson's motion to withdraw as counsel for Wolf Pup LLC on April 21, 2009 specifically stated that Wiggins would continue as Wolf Pup LLC's attorney in this case. Exh. 21. That action clearly waived disqualification of Mr. Wiggins, both by the ensuing delay of nearly a year and by the direct statement in Baker Donelson's motion to withdraw that Wolf Pup LLC should continue to be represented by Mr. Wiggins in this case. Exh. 21.

## V. DISQUALIFYING WIGGINS OR CURENTON WOULD BE FUTILE BECAUSE ANY SUCCESSOR ATTORNEY WILL STILL HAVE TO INTERACT WITH WIGGINS AS THE OWNER OF THE ENTITY OWNING 80% OF WOLF PUP LLC

Because eighty percent (80%) of Wolf Pup LLC is owned by Beowulf LLC, which is 100% owned by Ann and Robert Wiggins, any attorney representing Wolf Pup LLC, whether it be Jim Curenton or any successor attorney, will have to interact with and take directions from Mr. Wiggins even if he is disqualified as the attorney for Wolf Pup. The Alabama Rules of Professional Conduct state that an attorney employed or retained by an organization "represents the organization acting through its duly authorized constituents." Ala. R. Prof. Conduct 1.13. The Restatement (Third) on lawyering explains that "[p]ersons authorized to act for the organization make decisions about retaining or discharging a lawyer for the organization, determine the scope of the representation, and create an obligation for the organization to compensate the lawyer. " Restatement (Third) of The Law Governing

Lawyers, §96. Disqualification would thus be counter-productive at best.

## VI.   DISQUALIFICATION IS DISFAVORED

The delay in seeking disqualification shows that Peacock and Baker Donelson have raised the issue as a tactical weapon to harass the parties to this case and to cause needless delay in reaching the pending summary judgment motions.  Courts have cautioned against allowing disqualification motions that appear to be purely tactical in nature: "Because a motion for disqualification is such a potent weapon and can be misused as a technique of harassment, the court must exercise extreme caution in considering it to be sure it is not being used to harass the attorneys sought to be disqualified." *In Re Employment Discrimination Litigation Against Alabama*, 453 F.Supp.2d 1323, 1332 (M.D. Ala. 2001); *Pigott v. Sanibel Development LLC*, 2007 WL 2713188, *1 (S.D. Ala. 2007); *Macheca Transport Co. v. Philadelphia Indem. Co.,* 463 F.3d 827, 833 (8th Cir.2006) (citation omitted) ("Because of the potential for abuse by opposing counsel, disqualification motions should be subjected to particularly strict scrutiny."); *Herrmann v. GutterGuard, Inc.,* 2006 WL 2591878, *6 (11th Cir. Sept. 11, 2006) (observing that disqualification orders are harsh sanctions that should be resorted to sparingly and that disqualification motion brought by opposing counsel should be viewed with caution because of potential misuse as a technique of harassment); *Adkins v. The Hospital Authority of Houston Co., Ga.*, 2009 WL 3428788, *6 (M.D. Ga. 2009) ("Generally, courts are "reluctant to grant motions to disqualify opposing counsel because 'disqualification has an immediate adverse effect on the client by separating him from

counsel of his choice,' because parties often move for disqualification of opposing counsel for tactical reasons, and because, 'even when made in the best of faith, such motions inevitably cause delay.") (quoting *Clough v. Richelo,* 274 Ga.App. 129, 132, 616 S.E.2d 888 (2005) and quoting *Reese v. Ga. Power Co.,* 191 Ga.App. 125, 127, 381 S.E.2d 110 (1989)); *see also Nuri,* 5 F.Supp.2d at 1304.).

"'The party moving to disqualify counsel bears the burden of proving the grounds for disqualification.'" *Pigott v. Sanibel Development LLC,* 2007 WL 2713188, *1 (S.D. Ala. 2007) (quoting *In re BellSouth Corp.,* 334 F.3d 941, 961 (11th Cir.2003)); *Adkins,* 2009 WL 3428788 at *7 ("Of course, the party bringing the motion to disqualify bears the burden of proving the grounds for disqualification.").

"The law is clear that a civil litigant 'is presumptively entitled to the counsel of his choice, [and] that right may be overridden only if compelling reasons exist.'" *Pigott, supra* at *1 (quoting *In re BellSouth Corp.,* 334 F.3d 941, 961 (11th Cir.2003); *see also Macheca Transport Co. v. Philadelphia Indem. Co.,* 463 F.3d 827, 833 (8th Cir.2006) ("A party's right to select its own counsel is an important public right and a vital freedom that should be preserved; the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary.") (citations omitted).

"The court must be 'solicitous of a client's right freely to choose his counsel ... mindful of the fact that a client whose attorney is disqualified may suffer the loss of time and money in finding new counsel and may lose the benefit of its longtime counsel's specialized

knowledge of its operations.'" *Schwartz v. Family Dental Group*, 2005 WL 1670625, *2 (Conn. Super., June 8, 2005); *Adkins v. The Hospital Authority of Houston Co., Ga.*, 2009 WL 3428788, *6 (M.D. Ga. 2009) ("In fact, a disqualification order should 'be resorted to sparingly.'"(quoting *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n. 4 (11th Cir.1982)). "A district court should not disqualify an attorney 'on the basis of a determination after the fact that conduct is unethical if responsible attorneys would differ in appraising the propriety of that conduct.'" *Adkins*, 2009 WL 3428788 at *6. (quoting *In re Finkelstein*, 901 F.2d 1560, 1565 (11th Cir.1990).

## VII.   THE DEPOSITIONS OF LINDA PEACOCK AND THE CLAIMS AGAINST HER ARE FOR THE BENEFIT OF WOLF PUP LLC

Peacock and Baker Donelson allege that the effort to depose Peacock in this case is "to support Wiggins' claims against Peacock in other litigation." *Motion* at 2. That other litigation, however, was filed by Wolf Pup LLC itself. *See* Exhs. 4 and 20. The depositions are sought by Wolf Pup in this case because Peacock and Baker Donelson have refused to tell it if there is any defense to the current defendants' allegation that they failed to properly draft such condominium documents, notwithstanding the fact that they are Wolf Pup LLC's former counsel in this case and the lawyers who drafted the allegedly defective condominium documents. A deposition subpoena and notice has been filed to discover what defense Wolf Pup LLC may have to the allegation that its former attorneys — Peacock and Baker Donelson — failed to properly draft the condominium units necessary to convey the individual

condominium units to the defendant-purchasers.   The first topic of the Rule 30(b)(6) deposition notice to Baker Donelson asks for a deponent knowledgeable of:

1.    Whether Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. has any facts, opinions or defenses as the lawyers who drafted and filed the documents required to create the Wolf Bay Landing Condominium units that dispute the following allegations regarding such condominium documents that are contained in the motions for summary judgment filed by defendants Brad Griggs, Jimmy Grantham, Deryl Owens, White Sands, Inc., d/b/a Remax of Orange Beach , The First Team and Benson Properties, Inc. and, if so, what are such facts, opinions or defenses:

(a)    The allegations in the  motions for summary judgment that "'[t]he defectively drafted Declaration of Condominium of Wolf Bay Landing Condominium failed to create the individual condominium units.'"

(b)    The allegations in the motions for summary judgment that such condominium documents "failed to comply 'with the mandatory dictates of the Alabama Uniform Condominium Act, §35-8A-1 *et seq*, Code of Alabama (1975), in order to legally create condominium units as separate parcels of real estate with titles severed from the estate of the whole [which] was a condition precedent to the buyer defendants' duty to close.'"

(c)    The allegations in the motions for summary judgment that "the buyer defendants could have never closed" because such condominium documents "failed to legally create the condominium units which are the subject of those contracts."

(d)    The allegations in the motions for summary judgment that because such condominium documents "did not create the individual condominium units as separate parcels of real estate which could be conveyed to the individual buyer defendants, [Wolf Pup LLC] did not tender the performance

owed under the subject contracts, and could have never consummated those transactions."

It is obviously in Wolf Pup's best interest to at least know how to defend against such allegations in the pending summary judgment motions.  Wolf Pup LLC fully intends to defend against the pending motions for summary judgment if it can discover any defense from its former attorneys that may exist to the foregoing allegations. Peacock's motion states that such allegations are "erroneous", but never suggests why the *Bowles* defendants are in error. As a former client of Peacock and Baker Donelson, Wolf Pup LLC has a right to know what such attorneys mean when they say that there is no merit to the pending motions for summary judgment.  The purpose of the depositions at issue is to require Peacock and Baker Donelson to divulge such defense to their former client *if it exists* so that Wolf Pup can, in turn, defend itself against the pending summary judgment motions.

Peacock and Baker Donelson have an ongoing duty to Wolf Pup LLC to "take steps ... to protect a [former] client's interests" after termination of the attorney-client relationship. Alabama Rule of Professional Responsibility 1.16(d) states: "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests...." The Official Comment to that Rule states that "[e]ven if the lawyer has been unfairly discharged by the client, a lawyer must take all reasonable steps to mitigate the consequences to the client." Comment to Ala. R. Prof. Resp. 1.16(d).

It is also untrue that Bob Wiggins is the source of the negligent drafting allegations

against Peacock and Baker Donelson.  That allegation originated with the attorneys for the defendant-purchasers in this action who conveyed the allegation to Mr. Wiggins during the course of this lawsuit.   Wiggins did not know about the allegedly defective condominium documents before then.   The lawsuits that Wolf Pup LLC brought against Peacock and Baker Donelson were filed only after the allegations of defectively drafted condominium documents were raised in this case by the defendant-purchasers of the condominium units. Baker Donelson's defective drafting of the condominium documents for Wolf Bay Landings was first raised by the attorneys for  defendants *Bowles, et al.* in 2007-2008 while Baker Donelson was still Wolf Pup's attorney in this case.  Baker Donelson and Linda Peacock did nothing about such allegations, and withdrew from representation of Wolf Pup LLC only two years later.

## VIII.  ATTORNEYS REPRESENTING A COMPANY DO NOT VICARIOUSLY REPRESENT ITS MEMBERS OR THE GUARANTORS OF ITS DEBTS

Disqualification is sought by non-parties to this case on the ground that any attorney who represents Wolf Pup LLC necessarily represents one of such non-parties,  Linda Peacock, because she is a member of a separate company —— Watershed Investments LLP —— that is a 10% member of Wolf Pup LLC.  It is well settled, however, that an attorney representing a company like Wolf Pup  does not represent the members of the company, much less someone like Ms. Peacock who was not a member of the company being represented.  The Restatement (Third) on lawyering explains that:

A lawyer who has been employed or retained to represent an organization as a client owes professional duties of loyalty and competence to the organization. By representing the organization, a lawyer does not thereby also form a client-lawyer relationship with all or any individuals employed by it or who direct its operations or who have an ownership or other beneficial interest in it, such as its shareholders.

\* \* \*

A lawyer representing only an organization does not owe duties of care (see § 52), diligence (see § 16), or confidentiality (see § 60) to constituents of the organization.

\* \* \*

The so-called "entity" theory of organizational representation . . . is now universally recognized in American law, for purposes of determining the identity of the direct beneficiary of legal representation of corporations and other forms of organizations. \* \* \* Pursuant to the entity theory, the rights and responsibilities of the client-lawyer relationship described in Chapter 2 obtain between the organization and the lawyer.

Restatement (Third) of The Law Governing Lawyers, §96; *see also Bieter Co. v. Blomquist*, 132 F.R.D. 220, 225 (D. Minn. 1990) ("Representing the "interests" of a party is, however, not the same as representing the party, and absent an attorney-client relationship between CRP and HDG on the one hand, and Dorsey & Whitney on the other, there is no violation of Rule 1.9.").[5]

---

[5] The Restatement (Third) of the Law Governing Lawyers cites the following cases for the rule that a lawyer representing an organization does not thereby represent officers or other constituents: *Pelletier v. Zweifel*, 921 F.2d 1465 (11th Cir.), cert. denied, 502 U.S. 855, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991) (lawyer's fiduciary duty is to the entity; shareholder may not sue entity's lawyer for violation of duties to shareholder); *Lane v. Chowning*, 610 F.2d 1385 (8th Cir.1979) (lawyer who represented bank for 40 years owed no fiduciary obligation to chairman of bank and thus could participate in effort to remove him for participation in illegal bank loan); *In re Consumers Power Co. Derivative Litigation*, 132 F.R.D. 455, 475-76 (E.D.Mich.1990); *Egan v. McNamara*, 467 A.2d 733 (D.C.1983) (lawyer who drafted buy-sell agreement owed duty to corporation and not to shareholder adversely affected by terms of agreement); *Cole v. Ruidoso Munic. Schools*, 43 F.3d 1373 (10th Cir.1994) (on facts here, for purposes of resolving former-client conflict objection, principal of school *could not reasonably have believed* that school's lawyers also represented her);

The Alabama LLC statute specifically states that "[n]either a member nor a manager of a limited liability company is a proper party to proceedings by ... a limited liability company, except where the object is to enforce a member's or manager's rights against or liability to the limited liability company." Alabama Code §10-12-18. This case does not come within the exception because its object is not to "enforce a member's or manager's rights against or liability to the limited liability company." §10-12-18. The official Commentary to §10-12-18 of the Alabama LLC statute states that "[i]t is intended to affirm the status of the limited liability company as an entity separate and apart from the members." *Id.* "Individual members of a limited liability company have no individual vested rights in and to property owned by the LLC." *Fausak's Tire Center, Inc. v. Blanchard*, 959 So.2d 1132, 1145 (Ala. Civ. App. 2006); *Russell v. Birmingham Oxygen Services, Inc.*, 408 So.2d 90, 93 (Ala. 1981)("A corporation, just like an individual, must enforce its own rights and

---

*Morin v. Trupin*, 778 F.Supp. 711 (S.D.N.Y.1991) (lawyer for general partners of real-estate partnership owed no duty of care to limited partners and thus was not liable on theory of negligent misrepresentation to limited partners); *Skarbrevik v. Cohen, England & Whitfield*, 282 Cal.Rptr. 627 (Cal. Ct. App. 1991) (lawyer for close corporation had no duty of care to minority shareholder); *In re Owens*, 581 N.E.2d 633 (Ill.1991) (lawyer who represented only partnership did not violate prohibition on business dealings with clients by transaction with individual partners); *Addley v. Beizer*, 423 S.E.2d 398 (Ga.Ct.App.1992) (lawyer for corporation had no power to bind officers personally to contract); *Pappas v. Southeast Universal Dev., Inc.*, 415 S.E.2d 190 (Ga.Ct.App.1992) (on facts here, lawyer for joint venture did not have client-lawyer relationship with member of venture sufficient to warrant disqualification of lawyer from representing plaintiff against member in unrelated suit); *Strutz v. Robinson*, 558 N.E.2d 896 (Ind.Ct.App.1990), vacated on other grounds, 568 N.E.2d 547 (Ind.1991) (lawyer for trust had no power to make beneficiary binding beneficiary individually); *Talvy v. American Red Cross*, 618 N.Y.S.2d 25 (N.Y.App.Div.1994) (former personnel director of charity had no client-lawyer relationship with firm representing charity and thus could not disqualify firm in suit against charity for employment discrimination); *Bowen v. Smith*, 838 P.2d 186 (Wyo.1992) (minority shareholders in cooperative had no client-lawyer relationship with lawyer for cooperative sufficient to maintain legal-malpractice action); *see* Restatement (Third) of The Law Governing Lawyers at §96. *See also Schwartz v. Family Dental Group*, 2005 WL 1670625, * 2 (Conn. Super. 2005) ("[T]he commentary to rule 1.13 explains that 'constituents of an organizational client' ('officers, directors, employees, and shareholders') are not 'clients of the lawyer.' Consequently, the plaintiff was never represented by Cohen and Wolf during the time that they represented Clinton Associates since the plaintiff is a shareholder of Clinton Associates . . . ."); *Lamont Community Church v. Lamont Christian Reformed Church*, 285 Mich.App. 602, 614, 777 N.W.2d 15, 22-23 (Court of Appeals of Michigan, Sept. 22, 2009).

privileges."); *Stockton v. CKPD Development Co., LLC*, 936 So.2d 1065, 1077 (Ala. 2006) ("a litigant may not claim standing to assert the rights of a third-party."); *Power Equipment Company, Inc. v. First Alabama Bank*, 585 So.2d 1291, 1299 (Ala. 1991) ("A corporation is a distinct entity, to be considered separate and apart from the individuals who compose it."); *Poff v. Hayes*, 763 So. 2d 234, 239 (Ala. 2000)("A corporation is an entity distinct from its stock holders."); *Ex Parte ReLIFE, Inc.*, 679 So.2d 664, 667 (Ala. 1996)(holding that "individual stockholders were not parties to this transaction. Any action based on that contract must be brought in the name of the corporate entity."). *See also Filo America, Inc. v. Olhoss Trading Co. LLC*, 321 F.Supp. 2d 1266 (M.D. Ala. 2004).

As already mentioned, Peacock was never a member of Wolf Pup LLC. She only claims to be a member of Watershed Investments LLC, which is not a member of Wolf Pup LLC, and Watershed Investments LLP, which is a 10% a member of Wolf Pup LLC.[6] Neither of the Watershed entities are parties to this case. Watershed Investments LLC has never been a party and Watershed Investments LLP was dismissed nearly three years ago because it has no cognizable interest in this case. *See* Exhibit A attached. As an alleged member of Watershed, Ms. Peacock cannot have any status greater than the entity itself which has already been dismissed as a party. Only Wolf Pup LLC has been a party-plaintiff to this action since April 2007. *Id.*

---

[6] Peacock is not shown to be a partner of Watershed Investments LLP or a member of Watershed Investments LLC in the records on file with the Secretary of State's office for such entities.

Peacock and Baker Donelson are even further removed from any cognizable interest in this case when they argue that Jim Curenton and Bob Wiggins represent Peacock because she is a "guarantor" of a loan to Wolf Pup LLC.   An attorney for a company does not represent the guarantors of the company's debts or anyone other than the Company itself, as already shown above. Peacock and Baker Donelson cite no authority for their argument that attorneys representing a company also represent the guarantors of the company's debt.

## IX.   PEACOCK'S THEORY OF VICARIOUS REPRESENTATION WOULD DISQUALIFY STARNES & ATCHISON AS HER ATTORNEY

Ms. Peacock's theory that attorneys for Wolf Pup LLC represent her as a member of a member of the LLC is so broad and ill-defined that it would disqualify her own counsel — Starnes& Atchison — who stand in exactly the same posture as Mr. Curenton.  If Mr. Curenton is disqualified because he represents Mr. Wiggins as a member and attorney of Wolf Pup LLC, then Starnes & Atchison are also disqualified by their parallel representation of another member and attorney of the same LLC — Ms. Peacock and/or Baker Donelson. There is no difference between the two situations under Ms. Peacock's attenuated theory of vicarious representation.  Wolf Pup LLC's confidences are just as much imputed to Starnes & Atchison by their representation of Wolf Pup's former attorneys — Peacock and Baker Donelson — as they are to Mr. Curenton under Ms. Peacock's current argument. The same is true of Bob Wiggins' confidences.  If Linda Peacock was the vicarious client of Wolf Pup's attorneys because of her being a member of a member of the LLC, then that is no less

the case with the confidences of Mr. Wiggins which are imputed to Starnes & Atchison through its representation of Wolf Pup's other attorneys, Peacock and Baker Donelson.

## CONCLUSION

For all the foregoing reasons, the disqualification motion lacks any semblance of merit and should be denied so that this three year old case can be brought to conclusion.

  *s/ James G. Curenton, Jr.*
JAMES G. CURENTON, JR.   CUR009
Attorney for Wolf Pup, LLC
P.O. Box 1435
Fairhope, AL  36533
(251) 928-3993
jim_jcl@bellsouth.net

## CERTIFICATE OF SERVICE

I hereby certify that I have on the 19th day of August, 2010, served a copy of the foregoing pleading on all parties or their counsel by AlaFile, by hand delivery, by facsimile transmittal, or by mailing United States Postal Service, first class postage prepaid and addressed as set out below:

Mark A. Newell, Esq.
P.O. Box 2067
Mobile, AL 36652

Clayton T. Sweeney, Esq.
2700 Highway 280, East, Suite 160
Birmingham, AL 35223

Braxton Blake Lowe, Esq.
P. O. Box 3304
Gulf Shores, AL 36547

Laurie Boston Sharp, Esq.
P. O. Box 567
Alabaster, AL 35007

A. Riley Powell, IV, Esq.
P. O. Box 4227
Gulf Shores, AL 36547

Samuel G. McKerral, Esq.
P. O. Box 818
Gulf Shores, AL 36547

Wolf Pup v. Linton Bowles, et al
Case No. CV-2007-900084                         32

Robert Wiggins, Esq.
301 19th Street, North
Birmingham, AL 35203

Matthew B. Hall, Esq.
P. O. Box 2067
Mobile, AL 36652

T. Kelly May, Esq.
H. Cannon Lawley, Esq.
Michael T. Scivley, Esq.
M. Keith Gann, Esq.
Eris Bryan Paul, Esq.
Three Protective Center, Ste 200
2801 Hwy. 280, South
Birmingham, AL 35223

W. A. Kimbrough, Jr., Esq.
1359 Dauphin Street
Mobile, AL 36604

James A. Key, Jr,. Esq.
1900 International Park Dr., Ste. 220
Birmingham, AL 35243

Kevin K. Hays, Esq.
Hays Law Firm/Gulf South Title Services
300 Vestavia Parkway, Ste. 3450
Birmingham, AL 35216

_s/ James G. Curenton, Jr._
James G. Curenton, Jr.