FILED
2017 Nov-02 PM 03:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ROBERT L. WIGGINS, JR., et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No.: 2:12-cv-02705-SGC |
| FDIC, as Receiver of Superior Bank, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIM[1]

This action is currently before the court on Robert L. Wiggins, Jr. and Wolf Pup, LLC's ("Wolf Pup") (collectively, "Plaintiffs") motion to dismiss the amended counterclaim for fraudulent misrepresentation asserted against them by defendants/counterclaim plaintiffs Frank P. Ellis, IV ("Ellis") and Character Counts, LLC ("CCLLC"). (Doc. 194). The motion is fully briefed and ripe for review. (Docs. 194, 201 & 206). After careful consideration of the amended counterclaim and the parties' briefing, and for the reasons set forth below, the court denies Plaintiffs' motion.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 193).

## I. STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a counterclaim to contain "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a counterclaim defendant may move to dismiss a counterclaim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a 12(b)(6) motion, a pleading "must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Adinolfe v. United Tech. Corp.*, 768 F.3d 1161, 1169 (11th Cir. 2014) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). A pleading "does not need detailed factual allegations," but "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

When deciding a motion to dismiss a counterclaim under Rule 12(b)(6), a court must assume the truth of the factual allegations in the counterclaim and view those facts in the light most favorable to the counterclaim plaintiff. *See Adinolfe*, 768 F.3d at 1169 (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a [counterclaim] is inapplicable to legal conclusions" couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Additionally, when deciding a motion to dismiss, a court may not dismiss a counterclaim merely because it appears unlikely the counterclaim plaintiff will ultimately prevail on the merits. *See Twombly*, 550 U.S. at 563 n.8.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[2]

Wolf Pup owned a condominium development in Baldwin County, Alabama (the "Property") that was financed through a loan with Superior Bank. (Doc. 187 at ¶ 3). Wiggins and third-party defendant/counterclaim plaintiff Linda J. Peacock ("Peacock") are indirect members of Wolf Pup. (Doc. 187 at ¶¶ 2 & 4).[3] Ellis is an owner and member of CCLLC. (*See* Doc. 187 at ¶ 26; Doc. 206-2). CCLLC purchased the Property from Wolf Pup by assuming the loan. (Doc. 183-1).

CCLLC and Ellis allege that Wiggins and Peacock directed Scott Raley, an owner/member of Wolf Pup, to inform Ellis that the Property "was a legally created, ready-to-sell condominium project" even though they knew of problems with the creation of the condominiums units. (Doc. 187 at ¶¶ 18-19, 33, & 50-52; *see also* Doc. 194-3 at 3). CCLLC and Ellis also allege that Wiggins and Peacock informed them "the condominium units were properly formed under applicable law" to induce them to purchase the Property. (Doc. 187 at ¶¶ 52, 62-63). After CCLLC purchased the Property, Ellis and CCLLC learned the declaration of condominium for the Property was defective and failed to create any condominium

---

[2] The facts and allegations of this case are more fully set out in the Report and Recommendations regarding prior motions to dismiss. (Docs. 138, 156 & 158).

[3] Wiggins is an owner of Beowulf, LLC, and Beowulf, LLC owns 80% of Wolf Pup. (Doc. 194-3 at 2; *see also* Doc. 117-1 at 2; Doc. 187 at ¶ 4). In addition, Wiggins presented himself as the majority member of Wolf Pup in Wolf Pup's proof of claim to the Federal Deposit Insurance Corporation ("FDIC"). (Doc. 28-2 at 1).

units for resale. (*See id.* at ¶ 45). Accordingly, the Property was worth less than the $23 million CCLLC and Ellis had anticipated it was worth. (*See id.* at ¶ 53; Doc. 187-2). Ellis later purchased the loan from Superior Bank, foreclosed on the mortgage securing the Property, and sold the Property to another entity. (*See* Doc. 119-8).[4]

Plaintiffs initiated this action in 2012 against the FDIC as receiver of Superior Bank and amended their complaint in 2015 to assert claims against the FDIC, Ellis, and CCLLC. (Docs. 1 & 22). After Plaintiffs filed a second amended complaint in 2016 (Doc. 94), Ellis and CCLLC asserted amended counterclaims against Plaintiffs and Peacock (Doc. 112). Plaintiffs moved to dismiss the counterclaims asserted against them pursuant to Rule 12(b)(6), and this court granted their motion in part and denied it in part. (Docs. 118, 180 & 181). Relevant to Plaintiffs' pending motion, the court granted Plaintiffs' prior motion with respect to Ellis and CCLLC's claims for fraudulent suppression and fraudulent misrepresentation. (Doc. 181). The court dismissed the claim for fraudulent misrepresentation without prejudice and gave Ellis and CCLLC leave to reassert the claim. (*Id.*). Following the court's order, Ellis and CCLLC filed an amended counterclaim for fraudulent misrepresentation. (Doc. 187).

---

[4] Ellis sold the Property to Trinity Retreat, LLC, an entity owned by his wife, Mihyon Ellis. (Doc. 119-8; *see also* Doc. 94 at ¶ 34).

## III. ANALYSIS

To allege a claim for fraudulent misrepresentation against Plaintiffs, Ellis and CCLLC must allege facts showing "(1) a false representation (2) of a material existing fact (3) reasonably relied upon by [Ellis and CCLLC] (4) who suffered damage as a proximate consequence of the misrepresentation." *Exxon Mobil Corp. v. Ala. Dep't of Conservation and Nat. Res.*, 986 So. 2d 1093, 1114 (Ala. 2007) (quotation and emphasis omitted). Plaintiffs contend Ellis and CCLLC's amended counterclaim for fraudulent misrepresentation should be dismissed under Rule 12(b)(6) because they did not allege a plausible claim. (Doc. 194). Plaintiffs present numerous arguments to support their contention, and the court addresses each argument in turn.[5]

### A. Allegations of Misrepresentations

Plaintiffs first assert that Ellis and CCLLC's amended counterclaim for fraudulent misrepresentation must be dismissed because it is based on the same suppression-based allegations the Court previously found insufficient to state a viable claim of fraudulent suppression. (Doc. 194 at 2-3, 5-9). Plaintiffs argue the

---

[5] In the first paragraph of their motion to dismiss, Plaintiffs assert that Ellis does not have standing to assert a plausible claim for misrepresentation. (Doc. 194 at ¶ 1(g) & (h)). However, Plaintiffs did not present any arguments or authority to support that assertion. (*See* Doc. 194). As a result, Plaintiffs waived the argument that Ellis does not have standing to assert the amended counterclaim for misrepresentation. *See Hamilton v. Southland Christian School, Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it.") (citations omitted).

amended counterclaim "is explicit in treating silence and non-disclosure as 'representations' and 'communications.'" (*Id.* at 5).

Although the amended counterclaim contains many allegations that Plaintiffs suppressed material information, it also contains allegations that Plaintiffs made, or were responsible for, false representations regarding the Property. In particular, Ellis and CCLLC allege: (1) "Ellis had communications with the members of Wolf Pup regarding a potential purchase of [the Property];" (2) "Raley, at the direction of Wiggins [], informed Ellis that [the Property] was a legally created, ready-to-sell condominium project;"[6] (3) "Wolf Pup [and] Wiggins [] continued to represent to CCLLC, Ellis, and Superior that the units could be sold as a means of paying off the indebtedness due to Superior;" (4) Wiggins purported to convey a condominium unit at the Property to Ellis; (5) "Wiggins [], individually and on behalf of Wolf Pup, . . . represented to Ellis and CCLLC that [the Property] was a legally created, ready-to-sell condominium project by executed deeds purporting to transfer the units and in other documents acknowledging the purported existence of the units;" (6) "in communications with

---

[6] In their reply to Ellis and CCLLC's opposition to their motion to dismiss, Plaintiffs argue that Raley did not speak on their behalf because Raley had an adversarial relationship with Wiggins and "was on the opposite side of the transaction as one of the two purchasers of [the Property] . . . ." (Doc. 206 at 2-4, 8-9). This argument raises factual issues that the court cannot decide on a motion to dismiss. Additionally, the court will not consider arguments raised for the first time in a reply brief. *Herring v. Secretary, Dept. of Corrections*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (citations and internal quotations omitted).

Ellis and CCLLC . . . Wiggins [], both in [his] individual capacity[y] and as [a] member[] of Wolf Pup, informed Ellis and CCLLC that the condominium units were properly formed under applicable law, ready for resale as 62 separate units;" and (7) "in ongoing communications throughout August, September, October, and November 2007, Wiggins [], individually and on behalf of Wolf Pup, informed Ellis and CCLLC that [the Property] was a legally created, ready-to-sell condominium project." (Doc. 187 at ¶¶ 18-19, 33, 41-42, 52, 56). At this stage in the litigation, the court must accept the truth of these allegations and view them in the light most favorable to Ellis and CCLLC. *See Adinolfe*, 768 F.3d at 1169 (citations omitted).

The allegations, when viewed in the light most favorable to Ellis and CCLLC, show Plaintiffs did not just conceal or suppress material information. Instead, Ellis and CCLLC allege Plaintiffs made false representations of a material fact regarding the Property. (Doc. 187 at ¶¶ 18-19, 33, 41-42, 52, 56). Thus, the court is not persuaded by Plaintiffs' argument that the amended counterclaim is based only on the alleged suppression of material facts.

B. <u>Pleading Fraud with Particularity</u>

Next, Plaintiffs argue that Ellis and CCLLC's amended counterclaim for fraud should be dismissed because they failed to plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. (Doc. 194 at 3-5, 9-

7

11). Specifically, Plaintiffs assert Ellis and CCLLC's allegations fail to satisfy the requirements of Rule 9(b) because they do not identify the precise statements actually uttered; the time, place, and person responsible for the statements; or what Plaintiffs gained by the alleged fraud. (*Id.* at 2, 9, 11, 16-17). The court is not persuaded.

The Supreme Court of Alabama recognizes that "[m]isrepresentation may take many forms, a verbal misrepresentation being just one form." *Utah Foam Prods., Inc. v. Polytec, Inc.*, 584 So. 2d 1345, 1351 (Ala. 1991). Accordingly, Ellis and CCLLC do not need to allege a verbal statement that was actually uttered to plausibly assert a claim of fraudulent misrepresentation. Rather, their fraudulent misrepresentation claim can be based on Plaintiffs' conduct or misrepresentations contained within a written document. *Id*. ("The statements and conduct of the parties must be viewed in their entirety to adequately resolve the question of whether a misrepresentation has occurred."). Thus, Ellis and CCLLC's failure to allege an actual utterance is not fatal to their claim.

Plaintiffs argue the amended counterclaim for fraudulent misrepresentation must be dismissed because Ellis and CCLLC did not state the time, place, and person responsible for the alleged misrepresentation. (Doc. 194 at 9). As discussed above, Ellis and CCLLC contend Wiggins directed Raley to inform Ellis the Property was a legally created, ready-to-sell condominium development and

8

that Plaintiffs represented the Property's condominium units were properly formed and ready for resale. (Doc. 187 at ¶¶ 19, 33, 52, 56); *see* pp. 3, 6-7, *supra*.[7] Ellis and CCLLC also allege Plaintiffs made the misrepresentations between late July and November 2007. (Doc. 187 at ¶¶ 18-19, 52, 56). In addition, Ellis and CCLLC assert Plaintiffs made the misrepresentations in documents "purporting to transfer the [condominium] units and in other documents acknowledging the purported existence of the units," such as a release schedule agreement executed by Wolf Pup with the consent of Wiggins and a deed in which Wiggins "purported to convey Unit A301 of [the Property], as 'a condominium,' to Ellis by a warranty deed." (Doc. 187 at ¶¶ 41-42; *see also* Doc. 187-2). The court finds these allegations, construed in the light most favorable to Ellis and CCLLC, are sufficient to identify the time, place, and person responsible for the alleged misrepresentations.

Plaintiffs also argue that Ellis and CCLLC's amended counterclaim fails to allege what Plaintiffs gained by the alleged fraud. (Doc. 194 at 16-17). However, Ellis and CCLLC do allege several facts relating to what Plaintiffs gained through the alleged fraud. Specifically, Ellis and CCLLC assert Plaintiffs knew "they were

---

[7] Wiggins may be liable to Ellis and CCLLC for fraud if he directed Raley to make a misrepresentation about the Property to them even if Wiggins did not make a direct statement to Ellis and CCLLC. *See Henson v. Celtic Life Ins. Co.*, 621 So. 2d 1268, 1272 (Ala. 1993) (finding that direct communication between a plaintiff and defendant is not a requirement of a fraud claim and a plaintiff was entitled to rely on a statement a defendant made to the plaintiff's mother when the defendant intended for the plaintiff's mother to pass the statement on to the plaintiff).

unable to keep up with the [l]oan payments due Superior" and "that there was growing liability that would likely fall on [Wiggins and other guarantors] to personally satisfy." (Doc. 187 at ¶¶ 22, 63). Viewed in the light most favorable to Ellis and CCLLC, these allegations suggest Plaintiffs benefitted from the alleged fraud by avoiding liability for the loan.

Plaintiffs further contend Ellis and CCLLC cannot plausibly claim Plaintiffs benefited from the alleged fraud because the defect in the declaration of condominium for the Property could have been easily cured "in a matter of a few minutes" and it is not plausible Plaintiffs would have preferred to defraud Ellis and CCLLC rather than fixing the alleged defect. (*Id.*). Plaintiffs' argument on this point goes to the merits of the claim and relies on facts that are not alleged in the pleadings or evident in the documents the court may consider on a motion to dismiss. *See Adinolfe*, 768 F.3d at 1169; *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015) (noting that a court "ordinarily does not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss"). Accordingly, Plaintiffs' argument is not convincing at this stage of the litigation, and the court finds that Ellis and CCLLC's allegations are sufficient to satisfy the requirements of Rule 9(b).

C.  Fraud and Breach of Contract Claims

Next, Plaintiffs argue the amended counterclaim must be dismissed because it is based only on alleged defects in the warranty deed and declaration of condominium for the Property and Alabama law does not allow a breach a contract claim to be recast as a fraud claim. (Doc. 194 at 10-13). However, as mentioned above, Ellis and CCLLC assert Plaintiffs made misrepresentations regarding the Property's condominium units to induce Ellis and CCLLC to purchase the Property. (*See* Doc. 187 at ¶¶ 62-63); pp. 3, 6-7, *supra*. Thus, Plaintiffs allege fraud in the inducement, and the amended counterclaim of fraudulent misrepresentation is based on more than just the alleged defects in the warranty deed and declaration of condominium.

Under Alabama law, claims of fraudulent inducement and breach of contract may coexist. *See Combined Servs., Inc. v. Lynn Electronics Corp.*, 888 F.2d 106, (11th Cir. 1989) ("Alabama courts have consistently held that, where a party fraudulently conceals or misrepresents facts relating to its intention or ability to perform under a contract, 'a single transactions can support an award of damages for both breach of contract and fraud.'") (citations omitted); *Deupree v. Butner*, 522 So. 2d 242, 244 (Ala. 1988) (citations omitted). Accordingly, Ellis and CCLLC may assert their counterclaim of fraudulent misrepresentation, along with their breach of contract claims.

D. <u>Intent to Deceive</u>

Plaintiffs also argue the amended counterclaim should be dismissed because it does not plausibly allege an intent to deceive. (Doc. 194 at 17-18). However, intent to deceive is only a required element of a fraud claim when the claim is based on promissory fraud. *See P & S Bus., Inc. v. S. Cent. Bell Tel. Co.*, 466 So. 2d 928, 930 (Ala. 1985) (setting out the elements of fraud and promissory fraud) (citations omitted).[8] In this case, the amended counterclaim is not based on promissory fraud but on allegations that Plaintiffs made misrepresentations to induce Ellis and CCLLC to purchase the Property. (*See* Doc. 187). Thus, Ellis and CCLLC did not have to allege an intent to deceive to state a plausible claim of fraudulent misrepresentation.

E. <u>Reasonable Reliance</u>

Plaintiffs assert the amended counterclaim should be dismissed because it fails to plausibly allege reasonable reliance, which is an essential element of a fraud claim. (Doc. 194 at 18-20). In particular, Plaintiffs argue that Ellis and CCLLC could not plausibly allege reasonable reliance because the amended counterclaim and contracts between the parties show Ellis and CCLLC knew about the defects in the creation of the condominium units before CCLLC purchased the Property. (*Id.*). To support that argument, Plaintiffs point to two things: (1) a

---

[8] Promissory fraud is based on a defendant's promise to do something or refrain from doing something in the future. *E.g., Southland Bank v. A & A Drywall Supply Co., Inc.*, 21 So. 3d 1196, 1210 (Ala. 2008).

provision in a real estate purchase agreement dated August 7, 2007, requiring Wolf Pup to indemnify CCLLC against damages incurred in litigation pending in Baldwin County, Alabama, and (2) an allegation in Ellis and CCLLC's original counterclaim stating the defendants in the Baldwin County litigation alleged defects in the creation of the Property's condominium units. (Doc. 194 at 18-19).

Even if the court considers the real estate purchase agreement, Plaintiffs' argument is not compelling because the allegation in the original counterclaim does not indicate when Ellis and CCLLC learned of the allegations in the Baldwin County litigation. (*See* Doc. 26 at ¶ 13). Additionally, in the amended counterclaim for fraudulent misrepresentation, Ellis and CCLLC expressly assert they did not know the true nature of the Baldwin County litigation until the state court issued an order on December 9, 2010, holding the declaration of condominium was defective as a matter of law. (Doc. 187 at ¶ 45). The court must accept that allegation as true when ruling on Plaintiffs' motion to dismiss. Thus, the indemnity provision in the real estate purchase agreement does not show that Ellis and CCLLC knew the true nature of the Baldwin County litigation when CCLLC purchased the Property.

Plaintiffs also contend Ellis and CCLLC cannot allege reasonable reliance because the defect in the declaration of condominium and warranty deed appears on the face of the documents. (Doc. 194 at 20). Plaintiffs raised a similar

13

argument in their prior motion to dismiss. (*See* Doc. 117 at 13-16). For the reasons discussed in the December 20, 2016 Report and Recommendation,[9] the court finds Plaintiffs have not established at this stage in the litigation that Ellis and CCLLC cannot allege reasonable reliance. (*See* Doc. 158 at 29).[10]

F. <u>Allegations Based on Information and Belief</u>

Next, Plaintiffs assert the amended counterclaim for fraud must be dismissed because it relies upon allegations based on information and belief and such allegations are not permitted under Rule 9(b). (Doc. 194 at 21). "[W]hen Rule 9(b) applies, 'pleadings generally cannot be based on information and belief.'" *U.S. ex rel. Clausen v. Lab. Corp. of Am, Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (quoting *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Georgia, Inc.*, 755 F. Supp. 1040, 1052 (S.D. Ga. 1990)). However, when "specific factual information about the fraud is peculiarly within the defendant's knowledge or control," then a fraud claim may include allegations based upon information and belief, as long as the claim includes enough factual material to make the claim plausible. *See Hill v. Morehouse Med. Assoc., Inc.*,

---

[9] Since the entry of the Report and Recommendation, the parties have voluntarily consented to the jurisdiction of the undersigned magistrate judge. (Doc. 193).

[10] In their reply to Ellis and CCLLC's opposition to their motion to dismiss, Plaintiffs argue Ellis and CCLLC must have known about the deficiencies in the declaration of condominium because Raley was a member of CCLLC and because Raley recorded the as-built certification for the Property. (Doc. 206 at 5-8). However, arguments raised for the first time in a reply brief will not be considered by the court. *See Herring*, 397 F.3d at 1342; *Pennsylvania Nat. Mut. Ins. Co. v. J.F. Morgan Gen. Contractors, Inc.*, 79 F. Supp. 3d 1245, 1256 (N.D. Ala. 2015) (declining to consider an argument raised for the first time in a party's reply brief) (citations omitted).

2003 WL 22019936, *3 (11th Cir. Aug. 15, 2003) (internal quotation marks and alteration omitted); *see also Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1330 (Fed. Cir. 2009) ("Pleading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control, but only if the pleading sets forth the specific facts upon which the belief if reasonably based.").

The amended counterclaim contains more than sixty paragraphs, and Ellis and CCLLC base only five allegations upon information and belief. (Doc. 187 at ¶¶ 30, 37-38, 40). The allegations based on information and belief relate to information that is uniquely within Plaintiffs' knowledge, such as the substance of a telephone call or Wiggins's reason for transferring a condominium unit. (*See id.*). In addition, and as discussed above, Ellis and CCLLC provide sufficient specific factual allegations to make their fraud claim plausible. As a result, the court finds that Ellis and CCLLC did not violate the requirements of Rule 9(b) by relying on five allegations based on information and belief.

G. Fraud Claim against Wiggins

Finally, Plaintiffs argue the amended counterclaim fails to state a viable claim against Wiggins because it does not include any allegations that plausibly make Wiggins responsible for any alleged misrepresentation, and even if Wiggins

15

was a member of Wolf Pup, Alabama does not permit suit against members of a limited liability company. (Doc. 194 at 13-15). The court is not convinced.

The amended counterclaim alleges Wiggins directed Raley to inform Ellis that the Property "was a legally created, read-to-sell condominium project," Wiggins negotiated with Ellis regarding the sale of the Property, and Wiggins "continued to represent to CCLLC, Ellis, and Superior [Bank] that the [condominium] units could be sold as a means of paying off" the loan for the Property. (Doc. 187 at ¶¶ 19-20, 26, 33).[11] The amended counterclaim also alleges Wiggins purported to convey a condominium unit at the Property to Ellis even though Wiggins knew of problems with the declaration of condominium. (*Id.* at ¶ 41). Accepted as true and viewed in the light most favorable to Ellis and CCLLC, those allegations are sufficient to suggest Wiggins personally participated in the alleged fraud. Moreover, Wiggins is responsible for his alleged participation in the fraud even if he is a manager or member of Wolf Pup. *Ex parte McInnis*, 820 So. 2d 795, 798-99 (Ala. 2001) ("A corporate agent who personally participates, albeit in his or her capacity as such agent, in a tort is personally liable for the tort.") (quotation omitted); Ala. Code 1975 § 10A-5A-3.01 cmt. ("This section is not intended to relieve a member [of an LLC] from liability arising out of

---

[11] Plaintiffs contend Wiggins did not have any communication with Ellis until "years later." (Doc. 194 at 5). However, the court must accept Ellis and CCLLC's allegations as true when ruling on the motion to dismiss. *See Adinolfe*, 768 F.3d at 1169 (citations omitted).

the member's own acts or omissions . . . . A member would also be responsible for the member's own actions which may result in tort claims against the member, much like owners in other entities."). Thus, Plaintiffs have not shown that the amended counterclaim for fraud fails to state a plausible claim against Wiggins.

## IV. CONCLUSION

Based on the foregoing, Plaintiffs' motion to dismiss (Doc. 194) is **DENIED**, and Ellis and CCLLC's counterclaim for fraudulent misrepresentation may proceed.

**DONE** and **ORDERED** this 2nd day of November, 2017.

_____
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE